UNITED STATES DISTRICT COURT
For the District of Massachusetts

|  |  |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY, | ) ) ) ) |
| Plaintiff, | ) |
| VS. | ) ) |
| EASTERN CONTRACTORS, INC. | ) ) |
| Defendant/Third-Party Plaintiff, | ) ) ) |
| VS. | ) ) |
| CITY OF LAWRENCE, CITY OF FALL RIVER AND FREETOWN/LAKEVILLE REGIONAL SCHOOL DISTRICT, | ) ) ) ) |
| Third-Party Defendants. | ) ) ) ) |

C.A. No. 03-12502 RGS

## THIRD-PARTY DEFENDANT FREETOWN/LAKEVILLE REGIONAL SCHOOL DISTRICT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STAY LITIGATION AND COMPEL DEFENDANT/THIRD-PARTY PLAINTIFF EASTERN CONTRACTORS, INC. TO ARBITRATE PURSUANT TO MASS. GEN. L. C. 251, § 2

The Third-Party Defendant Freetown/Lakeville Regional School District (the "District") seeks an order under Mass. Gen. L. c. 251, § 2 staying the litigation brought against it by the Defendant/Third-Party Plaintiff Eastern Contractors, Inc. ("Eastern"), and compelling Eastern to arbitrate this dispute before the American Arbitration Association, as required by the written contract between Eastern and the District. Under Mass. Gen. L. c. 251, §§ 2(a) and 2(d), the

B0357190v1

District is entitled to an order staying the third-party complaint brought by Eastern against it and directing the District and Eastern to arbitrate such dispute.

## FACTUAL BACKGROUND

On or about November 6, 2000, Eastern, a general construction contractor, entered into a construction contract (the "Contract") with the District pursuant to which Eastern was to provide labor and materials in the construction of a new middle school in Lakeville, Massachusetts (the "Project") for a contract price of $19,967,000. Affidavit of James A. Marot (hereinafter "Marot Aff."), Ex. A, Standard Form of Agreement Between Owner and Contractor and General Conditions of the Contract for Construction ("GC") . The Contract is governed by the laws of the Commonwealth of Massachusetts. Id., Ex. A, GC at ¶ 13.1.1. In Articles 4.3 through 4.6 of the Contract's General Conditions, Eastern and the District provided a mechanism for resolution of disputes. Id., Ex. A, GC at ¶ 4.6. The Contract's arbitration provisions state, in relevant part:

> 4.6.1.  If negotiation or mediation fails to bring about resolution of any Claim, then at the Owner's soles discretion, the Claim shall be subject to arbitration.
>
> 4.6.2.  Any arbitration shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect.
>
> 4.6.3.  . . . . The award rendered by the Arbitrator or Arbitrators shall be final, and judgment may entered upon it in accordance with applicable law in any court having jurisdiction thereof.

Id., Ex. A, GC at ¶¶ 4.6.1, 4.6.2, 4.6.3. A "Claim" is defined as "a demand or assertion seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the Project [and] also includes other disputes and matters in question arising out of or relating to the Contract." Id., Ex. A, GC at ¶ 4.3.1.

In disregard of the dispute resolution requirements of the Contract, Eastern filed a third-party complaint in this matter on several third-party defendants, including the District. Eastern's Third-Party Complaint against the District (the "Third-Party Complaint") alleges, among other

-3-

things, that the District breached the Contract; that to the extent that Eastern is found liable under the main litigation in regard to the Project, Eastern is entitled to be indemnified by the District; and that Eastern is entitled to recover from the District under the theory of *Quantum Meruit*.[1] See generally, Third-Party Complaint.  Jurisdiction for the primary suit is allegedly founded on 28 U.S.C. § 1332 (diversity of citizenship).

The District and Eastern have negotiated the dispute without reaching resolution.  The District has elected to arbitrate this dispute pursuant to the provisions of the Contract.[2]  The District has sought Eastern's assent to arbitration of its claim pursuant to the governing provisions of the Contract but to date has not been able to obtain such assent.

## ARGUMENT

### The Court Should Order a Stay of the Litigation Brought by Eastern against the District and Compel Arbitration because the Contract between the Parties Requires that this Dispute be Resolved by Arbitration.

(A)   The Massachusetts Uniform Arbitration Act requires that where an agreement to arbitrate exists, the court shall order the parties to proceed to arbitration and stay litigation of the action.

Pursuant to Mass. Gen. L. c. 251, § 2(a):

> A party aggrieved by the failure or refusal of another to proceed to arbitration under an agreement . . . may apply to the [court] for an order directing the parties to proceed to arbitration.  If the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall, if it finds for the applicant, order arbitration . . . .

---

[1] The District denies the allegations in the Complaint and intends to assert its own claims and/or counterclaims with respect to this dispute.  However, for the purposes of this Motion, the allegations in the Third-Party Complaint brought by Eastern against the District form the basis to invoke the arbitration provision in the Contract and therefore must be addressed.

[2] A copy of the District's demand for arbitration, which the District plans to file with the American Arbitration Association is attached hereto as Exhibit A to the Affidavit of Corey E. Burnham-Howard.  See Affidavit of Corey E. Burnham-Howard, Ex. A, Construction Industry Arbitration Rules, Demand for Arbitration.

Mass. Gen. L. c. 251, § 2(a);³ Section 2(d) of Mass. Gen. L. c. 251 further provides that "[a]ny action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefore has been made under this section . . . ." and that "[w]hen the application is made in such action or proceeding, the order for arbitration shall include such stay." Mass. Gen. L. c. 251, § 2(d).

This application by the District is one which courts are ordinarily disposed to grant. See Microwave Antenna Sys. & Tech., Inc. v. Whitney-Pehl Constr. Co., 23 Mass. App. Ct. 25, 28, 498 N.E.2d 1059, 1061 (1986) (noting that under the statutory law of the Commonwealth of Massachusetts, a party to any suit involving an arbitrable dispute is entitled to request and ordinarily to receive from the court a stay pending arbitration). This tendency reflects the strong public policy of favoring arbitration as an alternative to litigation in expeditiously resolving commercial disputes. Danvers v. Wexler Constr. Co., Inc., 12 Mass. App. Ct. 160, 165, 422 N.E.2d 782, 785 (1981). Further, arbitration, once "selected by the parties to a contract, should . . . not [be] subject to delay and obstruction in the courts." Quirk v. Data Terminal Sys., Inc., 379 Mass. 762, 767, 400 N.E.2d 858, 861-62 (1980). Thus, once a dispute is determined to be arbitrable, it should, barring compelling reasons to the contrary, be remitted to the arbitral forum for consideration. Id. at 768.

---

³ This Court has jurisdiction over this application to compel arbitration. See Architects Collaborative, Inc. v. President and Trs. of Bates College, 576 F. Supp. 380 (D. Me., 1983) (holding that District Court had jurisdiction over the pending petition to compel arbitration because the Massachusetts Uniform Arbitration Act, Mass. Gen. L. c. 251, § 1 et seq., does not intend to limit an aggrieved party in seeking the assistance of any forum other than the courts of the Commonwealth of Massachusetts that may be available to grant the same or similar relief); Rest. Consulting Servs, Inc. v. Aspeon, Inc., 253 F. Supp. 2d 45, 51 (D. Mass. 2003) (finding Massachusetts Uniform Arbitration Act, Mass. Gen. L. c. 251, § 1 et seq., applied where underlying employment agreement called for use of Massachusetts law in determining rights and obligation of parties); Finn v. Westin Hotel Co., No. 84-3019-S, 1985 WL 5778, at *2 (D. Mass. March 8, 1985) (finding that even if the transaction did not involve "commerce" and thus fall under the scope of the FAA, the Court could address the motion to stay federal proceedings with the Court's inherent power and apply state law (i.e., Mass Gen. L. c. 251, § 1 et seq.)).

> (B)  A valid arbitration agreement exists between Eastern and the District, which is broad in scope, and the issues raised by the Third-Party Complaint fall within the Contract's coverage and are proper subjects for arbitration.

Under Massachusetts law, a written agreement to submit a controversy to arbitration "shall be valid, enforceable and irrevocable." Mass. Gen. L. c. 251, § 1.[4] When a contract contains an arbitration clause, Massachusetts courts will impose a presumption of arbitrability, which should not be denied unless it can positively be shown that interpretation of the arbitration clause would not cover the asserted dispute. Drywall Sys., Inc. v. ZVI Constr. Co., Inc., 435 Mass. 664, 666, 761 N.E.2d 482, 484 (2002) (citations omitted); Mass. Corr. Officers Federated Union v. Sheriff of Bristol County, 55 Mass. App. Ct. 285, 287-88, 770 N.E.2d 528, 531 (2002) (citations omitted). Any doubt should be resolved in favor of coverage, and such a presumption is particularly applicable when the arbitration clause is broad. Drywall Sys., Inc., 435 Mass. at 666, 761 N.E.2d at 484 (citing Local No. 1710, Int'l Ass'n of Fire Fighters v. Chicopee, 430 Mass. 417, 421, 721 N.E.2d 378, 382 (1999)).

---

[4]  The Contract is governed by the laws of the Commonwealth of Massachusetts and thus the Massachusetts Uniform Arbitration Act, Mass. Gen. L. c. 251, § 1 et seq., applies rather than the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq.. See Rest. Consulting Servs., Inc. v. Aspeon, Inc., 253 F. Supp. 2d 45, 51 (D. Mass. 2003). See also supra note 2. However, if this Court determines that the FAA is applicable, the Court should similarly find that, in accordance with Federal law, the litigation brought by Eastern against the District should be stayed and the Court should order the disputes between Eastern and the District be submitted to binding arbitration.

Section 2 of the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements . . . ." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983); 9 U.S.C. § 2 ("A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.")  "The 'primary purpose' of the FAA is to ensure 'that private agreements to arbitrate are enforced according to their terms.'" PaineWebber, Inc. v. Elahi, 87 F.3d 589, 593 (1st Cir. 1996) (quoting Volt Info. Scs., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989). Section 4 of the FAA further provides that upon a finding of a valid arbitration agreement, "the court shall make an order summarily directing the parties to proceed with arbitration in accordance with the terms thereof." 9 U.S.C. § 4. The arbitration clause in the Contract between the District and Eastern clearly requires all controversies arising out of the Contract or the Project to be resolved by arbitration, upon the unilateral demand of the District. Accordingly, this Court should stay the litigation brought by Eastern against the District and compel the parties to arbitrate the dispute.

> It has often been said . . . that an agreement to arbitrate which is expressed in general terms 'should be construed as broadly as it was intended' and that, under such a clause, the parties are deemed to have consented in advance to arbitrate any dispute which they cannot settle between themselves . . . .

Danvers v. Wexler Constr. Co., Inc., 12 Mass. App. Ct. 160, 163, 422 N.E.2d 782, 784 (1981) (citations omitted). The Contract between Eastern and the District requires that "*any Claim* . . . shall be subject to arbitration. . . . in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association . . . ." Marot Aff., Ex. A, GC at ¶¶ 4.6.1, 4.6.2 (emphasis added). "Claim" is defined in the Contract as "a demand or assertion seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the Project [and] also includes other disputes and matters in question arising out of or relating to the Contract." See id., Ex. A, GC at ¶ 4.3.1. The arbitration provision in the Contract is typical of the standard, broad arbitration provisions that Massachusetts courts enforce. See, e.g., Drywall Sys., Inc., 534 Mass. at 667, 761 N.E.2d at 485 (finding that broad arbitration clause language required parties to arbitrate); Gargano v. Swider, No. 97-5538, 1998 LEXIS 375, at *2 (Mass. Super. Feb. 3, 1998) (finding broad language of arbitration clause required parties to submit claims to arbitration); McGrew v. Patriots, No. 94-01713, 1995 LEXIS 854, at *8 (Mass. Super. Jan. 20, 1995) (compelling plaintiff to arbitrate where contract had broad arbitration clause).

Eastern's Third-Party Complaint seeks adjustment or interpretation of the Contract terms and damages and remedies that arise out of and relate to its contention that the District breached the Contract. See, e.g., Third-Party Complaint at ¶¶ 46-50. None of the Complaint's allegations are based on anything other than the contractual relationship between the parties and their

respective performance of the Contract.[5]  Since the allegations in the Complaint fall within the scope of the broad arbitration provision of the Contract, which the parties voluntarily agreed to, this Court should stay the litigation and compel arbitration of the dispute.

      (C)    The strong policy in favor of arbitration necessitates a stay, especially where, as here, neither judicial economy, nor the interests of other parties, will suffer any material harm by such a stay.

"[M]ost courts that have dealt with the question of a stay in the context of strong arbitration statutes like the Uniform Arbitration Act, have wherever possible, preferred enforcement of arbitration agreements between parties to a multi-party lawsuit." Danvers, 12 Mass. App. Ct. at 164, 422 N.E.2d at 785 (citations omitted).  Courts enforce such arbitration agreements in multi-party lawsuits on the basis that the strong policy in favor of arbitration necessitates a stay despite the fact that some judicial inefficiency might result. Id. at 165; see Maldonado v. PPG Indus., Inc., 514 F.2d 614 (1st Cir. 1975) (holding third-party action seeking contribution should be stayed for arbitration at the request of the third-party defendant rather than being tried with principal action); Finn v. Westin Hotel Co., No. 84-3019-S, 1985 WL 5778 (D. Mass. March 8, 1985) (rejecting assertion that there should be no arbitration until liability of third-party plaintiff was determined, and allowing third-party defendants motion to compel arbitration and stay the third-party proceedings against it).  "If a claim of right to arbitration could be foreclosed whenever a dispute between the parties to the contract derives from another person's claim against one of the parties, the utility of broad arbitration agreements would be undermined." Danvers, 12 Mass. App. Ct. at 165 (quoting Maldonado, 514 F.2d at 617).

Here neither judicial economy, nor the interests of other parties, will suffer any material harm by the requested stay.  Although some of the issues raised in the Third-Party Complaint

---

[5] See generally Third-Party Complaint against the District (alleging Eastern is entitled to (1) damages for breach of Contract; (2) indemnification under the Contract; and (3) Quantum Meruit for work performed under the Contract).

may be related to the issues in the main litigation, the issues raised in the Third-Party Complaint can be handled separately from the issues in the main litigation. Eastern may still assert all of the defenses that may be available to it in the main litigation and it may fully litigate its other third-party actions against the two other third-party defendants. Even if Eastern is forced to try certain aspects of the case twice:

> such risks and burdens inhere in, and flow from, [the] broad and unconditional agreement to arbitrate [any Claim between the parties, and] are insufficient . . . to deny recourse to arbitration a result which would, in essence, disregard the method specifically chosen by the parties to settle all their disputes and which would judicially rewrite their contract for them.

Id. at 166.

## CONCLUSION

The District and Eastern have expressly agreed to submit their disputes to arbitration. A written arbitration agreement, particularly one which is broad in scope, such as the one in the Contract between the District and Eastern, should be strictly enforced by the Court. Accordingly, the District is entitled to an order staying the litigation of the third-party claim brought by Eastern against the District and compelling the parties to arbitrate their disputes.

Respectfully submitted,

FREETOWN/LAKEVILLE REGIONAL
SCHOOL DISTRICT
By its attorneys,

/s/ Corey E. Burnham-Howard
Corey E. Burnham-Howard, BBO # 654160
Richard K. Allen, BBO # 553744
Gadsby Hannah LLP
225 Franklin Street
Boston, MA  02110
(617) 345-7000
cburnham@ghlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party, or if no attorney has yet appeared for each other party, upon each other party, by mail and/or electronically on April 1, 2004.

By: /s/ Corey E. Burnham-Howard

Bradford R. Carver
Cetrulo & Capone LLP
Two Seaport Lane
10th Floor
Boston, MA 02210
617-217-5208
617-217-5200 (fax)
bcarver@cetcap.com

Edward Quinlan
Quinlan & Sadowski
11 Vanderbilt Avenue
Suite 250
Norwood, MA 02062-506
781-440-9909
781-440-9979 (fax)
equinlan@qsatlaw.com

John O'Neil
O'Neil, Lucey & O'Neil
120 Purchase Street
Fall River, MA 02720

Magdalena Anna Loret
Quinlan & Sadowski, PC
Suite 205
11 Vanderbilt Avenue
Norwood, MA 02062
781-440-9909
781-440-9979 (fax)
mloret@qsatlaw.com

Charles Boddy, Jr.
City Attorney
City of Lawrence
200 Common Street
City Hall, Suite 306
Lawrence, MA 01840
978-794-5800
978-794-5799 (fax)

B0357190v1