UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY,<br><br>       Plaintiff,<br><br>v.<br><br>EASTERN CONTRACTORS, INC.,<br><br>       Defendant. | CIVIL ACTION NO. 03-12502-NMG |
| EASTERN CONTRACTORS, INC.,<br><br>       Third Party Plaintiff,<br><br>v.<br><br>CITY OF LAWRENCE, CITY OF FALL RIVER and FREETOWN/LAKEVILLE REGIONAL SCHOOL DISTRICT,<br><br>       Third Party Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF HARTFORD FIRE INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I.     INTRODUCTION**

      This matter involves a dispute between Eastern Contractors, Inc. ("Eastern") and a surety company, Hartford Fire Insurance Company ("Hartford"), arising out of the default of Hartford's principal, S&R Construction Co., Inc. ("S&R"), on a number of projects on which S&R served as Eastern's site subcontractor and for which Hartford, as surety, issued payment and performance bonds. By way of its Motion for Partial Summary Judgment, Hartford moves for summary judgment with respect to three of the projects for which it issued surety bonds on behalf of S&R.

1

## II.     UNDISPUTED FACTS[1]

### A.     The Lynnfield Middle School and Normandin Middle School Projects

On or about July 2, 2001, Eastern entered into a written subcontract ("the Lynnfield Subcontract") with S&R which called for S&R to perform certain site work at the construction of the New Lynnfield Middle School in Lynnfield, Massachusetts ("the Lynnfield Project").  On or about October 26, 2001, Hartford, as surety, issued a Subcontract Performance Bond on behalf of S&R, as principal, for the benefit of Eastern, as obligee, relative to the Lynnfield Subcontract and Project ("the Lynnfield Bond").

On or about November 9, 2001, Eastern entered into a written subcontract ("the Normandin Subcontract") with S&R, which called for S&R to perform certain site work at the construction of the Normandin Middle School in New Bedford, Massachusetts ("the Normandin Project").  On or about November 29, 2001, Hartford, as surety, issued a Subcontract Performance Bond on behalf of S&R, as principal, for the benefit of Eastern, as obligee, relative to the Normandin Subcontract and Project ("the Normandin Bond").

---

[1] This section provides a summary of the undisputed facts upon which Hartford relies in support of its Motion for Partial Summary Judgment.  The specific evidence upon which Hartford relies, along with citations to pertinent discovery materials, is set forth in Hartford's Statement of Undisputed Material Facts in Support of its Motion for Partial Summary Judgment (hereinafter, "Hartford's Statement").

The forms of the Lynnfield and Normandin Bonds were authored by the American Institute of Architects ("AIA") and are both known as "A311" bond forms. The Lynnfield and Normandin Bonds include the following language:

> Whenever Principal shall be, and be declared by Obligee to be in default under the Subcontract, the Obligee having performed Obligee's obligations thereunder:
>
> (1) Surety may promptly remedy the default subject to the provisions of paragraph 3 herein, or;
>
> (2) Obligee after reasonable notice to Surety may, or Surety upon demand of Obligee may arrange for the performance of Principal's obligation under the subcontract subject to the provisions of paragraph 3 herein;
>
> (3) The balance of the subcontract price, as defined below, shall be credited against the reasonable cost of completing performance of the subcontract. . . .

On or about September 24, 2002, Eastern, through its counsel, sent a letter to S&R and Hartford regarding, among other projects, S&R's alleged breaches on the Normandin and Lynnfield Projects. In the September 24, 2002 letter, Eastern took the position that all of the events referenced in the September 24, 2002 letter constituted events of default under the Normandin and Lynnfield Subcontracts. Eastern further demanded that S&R and Hartford cure the defaults and otherwise fulfill the obligations under the Normandin and Lynnfield Subcontracts. Eastern also requested a meeting between representatives of Hartford, S&R and Eastern "to review the status of the default under the subcontracts."

On or about September 30, 2002, representatives of Hartford, S&R and Eastern met to discuss, among other projects between S&R and Eastern that were bonded by Hartford, the Lynnfield and Normandin Projects. At the conclusion of the meeting, S&R agreed to provide additional manpower and equipment at the Lynnfield and Normandin Projects and to keep all parties, including Hartford, informed as to the progress of the work by written report.

Unbeknownst to Hartford, on or about January 9, 2003, Eastern and S&R entered into a written agreement pertaining to S&R's work on the Normandin and Lynnfield Projects ("the January 9, 2003 Agreement"). Hartford was not notified of, or consulted with, concerning the January 9, 2003 Agreement. Pursuant to the January 9, 2003 Agreement, Eastern released S&R "of all future contractual obligations for incomplete work" on the Normandin and Lynnfield Projects. While Hartford was not a party to the January 9, 2003 Agreement, the January 9, 2003 Agreement provided that S&R and Hartford will remain responsible for certain payments to subcontractors and "any corrective work deemed to be redone at no additional cost." Shortly thereafter, Eastern took over the work of S&R on the Lynnfield and Normandin Projects.

On or about March 4, 2003, Eastern, through its counsel, sent a letter to S&R and Hartford terminating the Normandin and Lynnfield Subcontracts. By that time, however, Eastern had already undertaken to perform the work of S&R on the Normandin and Lynnfield Projects.

### B.    The Spencer Borden Elementary School Project

On or about June 14, 2001, Eastern entered into a written subcontract ("the Spencer Subcontract") with S&R, which called for S&R to perform certain site work at the construction of the Spencer Borden Elementary School in Fall River, Massachusetts ("the Spencer Project"). The original contract amount for the Spencer Subcontract was $1,173,000.00.

On or about August 1, 2001, Hartford, as surety, issued a Subcontract Performance Bond on behalf of S&R, as principal, for the benefit of Eastern, as obligee, relative to the Spencer Subcontract and Project ("the Spencer Bond"). The penal sum of the Spencer Bond is $1,173,000.00.

4

On or about March 4, 2003, Eastern, through its counsel, sent a letter to S&R and Hartford terminating the Spencer Subcontract. On or about May 16, 2003, Hartford and Eastern executed a Takeover Agreement ("the Takeover Agreement"), pursuant to which Hartford agreed to arrange for completion of S&R's work on the Spencer Project. Thereafter, Hartford commenced that work utilizing the services of ROC Construction Co., Inc. ("ROC") as its completion contractor.

Pursuant to the Takeover Agreement (¶11), Eastern agreed that remaining contract balances on the Spencer Project would be periodically paid to Hartford. Despite that express commitment, and despite Hartford's submission of requisitions, Eastern never remitted any payment of the subcontract balance to Hartford. The Takeover Agreement (¶12) further provided:

> Eastern agrees that the total liability of the Hartford under this Agreement and under the Performance Bond[] for obligations relating to completion of S&R's work including corrections to previously performed work and warranty work <u>shall be limited to and shall not exceed the bond penalty of the Performance Bond[]. All payments made by the Hartford for performance of work, payment of damages or otherwise, shall be credited against the bond penalty of the Performance Bond[]</u>. Nothing in this Agreement constitutes a waiver of such bond penalty, or an increase in the liability of the Hartford under the Performance Bond[].

As the work was nearing completion in August 2003, Eastern ordered Hartford to cease all work on the Spencer Project. Eastern then arranged for completion of the Spencer Project utilizing its own forces and retained the contract balances on the Spencer Project. In arranging for completion of the work under the Takeover Agreement, Hartford expended $1,265,346.00, or $92,346.00 more than the penal sum of the Spencer Bond.

**III.   SUMMARY JUDGMENT STANDARD**

Summary judgment is warranted if, after reviewing the facts in the light most favorable to the nonmoving party, no genuine issues of material fact remain. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254, 106 S. Ct. 2505 (1986); Fed. R. Civ. P. 56(c). A "genuine" issue of fact is one that a reasonable jury, on the record before the court, could resolve in favor of either party. Anderson, 477 U.S. at 254, 106 S. Ct. 2505. A fact is material when it "might affect the outcome of the suit under the governing law." Hayes v. Douglas Dynamics, Inc., 8 F.3d 88, 90 (1st Cir. 1993). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. Id.

The movant has the initial burden of production, which it can meet either by offering evidence to disprove an element of the plaintiff's case or by demonstrating an "absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986). Once the movant has met its burden, the non-moving party must "go beyond the pleadings, and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a material issue for trial." Id. at 323-324, 106 S. Ct. 2548 (internal quotation marks omitted).

**IV.   ARGUMENT**

Hartford is entitled to summary judgment on Count VII of its Complaint for Declaratory Relief and an Order declaring that Hartford is discharged from all obligations and liability under surety bonds issued with respect to the Lynnfield and Normandin Projects for the independent reasons that (1) the surety bonds required notice of default by Eastern prior to Eastern undertaking to complete the S&R's subcontract work, and Eastern's failure to give such notice relieved Hartford of any and all liability and obligation under these bonds as a matter of law; and

6

(2) Eastern and S&R negotiated a settlement, without the knowledge or involvement of Hartford, prior to S&R's termination on the Lynnfield and Normandin Projects which effectuated a complete release of Hartford's obligations for incomplete work as a matter of law. Hartford is also entitled to summary judgment on Counts I and II of Eastern's Counterclaim as they pertain to the Spencer Project because Hartford has expended an amount in excess of the penal sum of the bond and, as a matter of law, Hartford has no further exposure on its bond relating to the Spencer Project.

> **A.    Eastern's Failure To Declare S&R In Default On The Lynnfield and Normandin Projects And Allow Hartford To Exercise Its Completion Options Rendered The Lynnfield and Normandin Bonds Null And Void And Discharged Hartford From Any And All Liability Under These Bonds.**

The rights and obligations of parties under a surety bond are to be determined by the terms of the bond, construed according to the usual rules of contract interpretation. Miller v. Perry, 333 Mass. 155, 158 (1955); In re Sinking of M/V Ukola, 806 F.2d 1, 4 (1st Cir. 1986); see also Elm Haven Constr. Ltd. Partnership v. Neri Constr., LLC, 376 F.3d 96, 100 (2nd Cir. 2004) (a bond is a contract to be construed in accordance with standard principles of contract interpretation). "The general rule is that a party suing on bond must show strict compliance with its terms." Simplex Time Recorder Co. v. Federal Ins. Co., 37 Mass. App. Ct. 947, 947 (1994). "[W]hen the wording of a contract is unambiguous, the terms will be enforced." Seaboard Sur. Co. v. Greenfield, 370 F.3d 215, 219 n.5 (1st Cir. 2004) (construing performance bond) (citations omitted).

Where an obligee fails to declare a default and denies the surety an opportunity to exercise its completion option, the surety is discharged from all liability under the bond as a matter of law. Courts have consistently held that an obligee's action that deprives a surety of its ability to protect itself pursuant to performance options granted under a performance bond

7

constitutes a material breach, which renders the bond null and void.  See Greenfield, 370 F.3d at 220; Enterprise Capital, Inc. v. San-Gra Corp., 284 F. Supp. 2d 166, 177 (D. Mass. 2003) (notice requirements "exist[] precisely to provide the surety an opportunity to protect itself against loss by participating in the selection of the successor contractor to ensure that the lowest bidder is hired and damages mitigated") (citations omitted); St. Paul Fire & Marine Ins. Co. v. City of Green River, 93 F. Supp. 2d 1170 (D. Wyo. 2000) (same); 120 Greenwich Dev. Assocs., LLC v. Reliance Ins. Co., 2004 U.S. Dist. LEXIS 10514 (D.N.Y. 2004) (same).

      Many other courts have reached the same conclusion that a surety is fully discharged from any bond liability when the obligee deprives the surety of its right to fulfill its bond obligations as it chooses.  In Balfour Beatty Constr. v. Colonial Ornamental Iron Works, Inc., 986 F. Supp. 82 (D. Conn. 1997), the obligee asserted a performance bond claim against the surety seeking damages caused by the principal's untimely completion of the project.  The obligee had never formally defaulted the principal, but rather allowed the principal to complete the project without the surety's involvement.  The Court noted that "'[u]nder a performance and completion bond, a surety generally has two options upon its principal's default.  First, the surety may undertake to complete the principal's work itself . . . . Second, the surety has the option of paying the obligee under the bond its damages, essentially, the obligee's cost of completion.'"  Id. at 85-86, quoting Granite Computer Learning Corp. v. The Travelers Indem. Co., 894 F.2d 547 (2d Cir. 1990).  The Balfour Court granted the surety's motion for summary judgment and held that the surety was discharged in full because the surety was "denied the opportunity to exercise any of its options under the performance bond."  Balfour, 986 F. Supp. at 86; accord L&A Contracting Co. v. Southern Concrete Servs., Inc., 17 F.3d 106, 111 (5th Cir. 1994) (surety discharged of all liability when obligee's actions deprive surety of its right to choose its response

8

option under the bond); School Bd. of Escambia County, Fla. v. TIG Premier Ins. Co., 110 F. Supp. 2d 1351, 1354 (N.D. Fla. 2000) (summary judgment granted in favor of surety because obligee did not allow surety to exercise performance options granted under bond); see also North Am. Specialty Ins. Co. v. Chichester Sch. Dist., No. CIV.A.99-2394, 2000 WL 1052055, at *14 (E.D. Pa. July 20, 2000) (ruling that owner default is a breach of obligations and therefore prejudices the surety).

A similar analysis and result also appears in Dragon Constr., Inc. v. Parkway Bank & Trust, 287 Ill. App. 3d 29, 678 N.E.2d 55 (1997). In that case, the obligee brought in a replacement contractor to complete the project without consulting the surety. Id. at 33, 678 N.E.2d at 58. The obligee then sued the surety seeking a declaratory judgment as to the surety's liability under the performance bond. The trial court granted the surety's motion for summary judgment, and held that the obligee's failure to provide the required notice discharged the surety from any obligation under the bond. Id. at 32, 678 N.E.2d at 57. The appellate court affirmed, reasoning that the purpose of the notice requirement was to allow the surety to exercise its rights under the performance bond, and the obligee's failure to provide such notice deprived the surety of its right to limit its liability. Id. at 33-34, 678 N.E.2d at 58. Thus, the obligee's action in completing the project with its own replacement contractor constituted a material breach of the bond, which rendered the bond null and void. Id.; accord Insurance Co. of North America v. Metropolitan Dade County, 705 So.2d 33, 35 (Fla. Dist. Ct. App. 1997) (owner's failure to provide notice to surety was a material breach of surety agreement, which wrongfully deprived surety of its completion options and its contractual right to minimize its damages; summary judgment entered in surety's favor); see generally Hamlen v. Rednalloh Co., 291 Mass. 119, 127,

197 N.E. 149, 154 (1935) (good faith requires obligee to accept surety's tender of performance or payment, and rejection of such tender relieves principal and surety of liability).

The recent decision in Elm Haven Constr. Ltd. Partnership v. Neri Constr., LLC, 376 F.3d 96, 100 (2nd Cir. 2004) is strikingly similar to this matter and strongly supports Hartford's position that it is discharged from all liability under the Bond. In Elm Haven, the Second Circuit Court of Appeals upheld the District Court's finding that the general contractor failed to comply with the bond provision requiring a declaration of default of the subcontractor and that the declaration of default was required to trigger the surety's liability under the performance bond.

Like the Bonds issued by Hartford, the Court in Elm Haven held that there were two conditions that the obligee had to meet in order to trigger the surety's liability: "First [the principal] had to be in 'in default' under the subcontract agreement and second [the obligee] had to 'declare [the principal] to be in default under the subcontract agreement.'" Id. at 100. The Court held that these were conditions precedent to the surety's performance on the bond and that, as such, they needed to be made to the surety in "precise terms." Id. Similar to Eastern continuing its relationship with S&R subsequent to the September 30, 2002 meeting, the court reviewed the correspondence between the obligee and the surety and noted that the record clearly evidenced the obligee's desire to continue its arrangements with the principal and keep the subcontract in force. Id. Rather than demonstrate a desire to end the relationship with the obligee, the letters "provided notice that part of [the principal's] work would be performed by others, indicating only that [the principal] would continue to perform some work under the agreement and requesting [the surety's] help in improving the ongoing relationship with [the principal]." Id. at 101. Thus, the letters failed to comply with the requirement that the obligee provide "clear and unequivocal" notice of default to the surety. Id. Significantly, the court in

10

Elm Haven held that a letter sent subsequently by the obligee in an attempt to remedy its failure to default the principal was ineffective and did not constitute the notice required under the bond because it came too late to give the surety the option of curing its principal's default. Id.

Like the sureties in the cases cited above, Hartford is entitled to summary judgment and a declaration that it is discharged from all liability under the Lynnfield and Normandin Bonds. The Bonds are clear that S&R must be in default and that Eastern must declare S&R to be in default before Hartford's obligations under the performance bond are triggered. Once these conditions precedent are met, the Bonds give Hartford the right to remedy the default and complete the contracts.

Here, Eastern failed to provide sufficient notice to Hartford that S&R had been actually declared in default, terminated and foreclosed from performing any work under the subcontracts prior to the termination letter of March 4, 2003. Prior thereto, Eastern ignored the provisions of the Bond and undertook to complete the Normandin and Lynnfield Subcontracts, thereby dissipating Hartford's security in the subcontract balances.[2] By taking such action, Eastern deprived Hartford of the opportunity to protect itself and mitigate against loss by participating in the selection of a successor contractor to ensure that the lowest bidder was hired to complete the subcontract work. See Elm Haven Ltd. Partnership v. Neri Constr., LLC, 281 F. Supp. 2d 406, 414 (D. Conn. 2003) (surety discharged where obligee had already contracted with a completion contractor without the involvement of the surety, which precluded the surety from exercising its options under performance bond).

---

[2] If the surety elects to complete the Project, the Bond provides that "[t]he balance of the subcontract price, as defined below, shall be credited against the reasonable cost of completing performance of the subcontract." (Exh. E).

11

In analogous fashion, courts in this jurisdiction and elsewhere have also held that failure to comply with similar default and termination provisions in the AIA A-312 bond also results in a complete discharge of the surety. See Seaboard Surety Co. v. Greenfield, 266 F. Supp. 2d 189, 196 (D. Mass. 2003), aff'd 370 F.3d. 215, 219 (1st Cir. 2004) (". . . the surety default provisions of Paragraph 5 constitutes an important contractual right of the surety. . . failure to provide this notice constitutes a material breach of the bond"); Greenfield, 266 F. Supp. 2d. at 196 and 198 (obligee materially breached bond, and surety was discharged from "any and all liability under the bond" where obligee did not allow surety to exercise its completion options); St. Paul Fire & Marine Ins. Co. v. Green River, 93 F. Supp. 2d. 1170, 1177 (D. Wy. 2000), aff'd 6 F.3d. 828 (10th Cir. 2001) (obligee's actions in preventing surety from exercising completion options constitutes a material breach which discharged the surety from any further obligations).

Eastern's failure to declare a default and provide Hartford an opportunity to exercise its completion option constituted a material breach of the Normandin and Lynnfield Bonds, and absolved Hartford of any and all liability to Eastern. Accordingly, Hartford is entitled to summary judgment on Count VII of its Complaint for Declaratory Relief and an Order declaring that Hartford is discharged from all obligations and liability under surety bonds issued with respect to the Lynnfield and Normandin Projects.

> **B. Hartford Is Entitled To Summary Judgment On Eastern's Claims For Incomplete Work On The Normandin And Lynnfield Projects.**[3]

As a general rule, the release of the principal discharges the surety. Chicago Title Ins. Co. v. Lumbermen's Mut. Cas. Co., 120 Md. App. 538, 551 (1998). In order to pursue a surety, a release must demonstrate not only that the parties did not intend to release the surety, but that

---

[3] Count I of Eastern's Counterclaim alleges, among other things, that "Eastern has been required to take steps to complete the incomplete work of S&R, and has incurred and will continue to incur great expense, damage and loss

the creditor expressly reserved its rights to pursue the surety.  Id. at 555; Federal Land Bank of Baltimore, Inc. v. Esham, 43 Md. App. 446, 406 A.2d 928 (1979).  This principle is supported by the RESTATEMENT (THIRD) SURETYSHIP & GUARANTY which provides, in relevant part, as follows:

> To the extent that the obligee releases the principal obligor from its duties pursuant to the underlying obligation:
>
> . . .
>
> (b) <u>the secondary obligor is discharged from any unperformed duties pursuant to the secondary obligation unless</u>:
>
> (i) <u>the terms of the release effect a preservation of the secondary obligor's recourse (§ 38); or</u>
>
> (ii) <u>the language or circumstances of the release otherwise show the obligee's intent to retain its claim against the secondary obligor</u>;
>
> (c) if the secondary obligor is not discharged from its unperformed duties pursuant to the secondary obligation by operation of paragraph (b), the secondary obligor is discharged from those duties to the extent:
>
> (i) of the value of the consideration for the release;
>
> (ii) that the release of a duty to pay money pursuant to the underlying obligation would otherwise cause the secondary obligor a loss; and
>
> (iii) that the release discharges a duty of the principal obligor other than the payment of money;
>
> . . .

See RESTATEMENT (THIRD) SURETYSHIP & GUARANTY, §39 (emphasis added).

Pursuant to the January 9, 2003 Agreement, Eastern released S&R "of all future contractual obligations for the incomplete work."  (See Judd Aff., Exhibit F).  The terms of the January 9, 2003 Agreement do not effect a preservation of Eastern's rights against Hartford for incomplete work.  Likewise, the language or circumstances of the January 9, 2003 Agreement do

---

in completing the subcontract work and other obligations because of the failure of Hartford to fulfill the duties owed."  (See Counterclaim, ¶17).

not demonstrate an intent by Eastern to retain its claim against Hartford for future contractual obligations for incomplete work. As a result, Hartford is entitled to summary judgment on Eastern's claims for incomplete work on the Normandin and Lynnfield Projects.

> **C.** **Hartford Is Entitled To Summary Judgment On Eastern's Claims On The Spencer Project Because Hartford Has Expended The Penal Sum Of The Spencer Bond.**

"'The liability of [a] surety [is] to make good any default of the principal in regard to payments, within the amount stated as the penal sum of the bond.'" Yanofsky v. Marinucci Bros & Co., 351 Mass. 698, 699 (1966), quoting George H. Sampson Co. v. Commonwealth, 202 Mass. 326, 339 (1909). The general rule in Massachusetts and elsewhere is that the penal amount limits recovery to that amount. See Hartford Accident & Indem. Co. v. Casassa, 301 Mass. 246, 255-256 (1938); Peerless Ins. Co. v. South Boston Storage & Warehouse, Inc., 397 Mass. 325 (1986) (holding that the penal sum is a limit not merely on each individual claim but on all claims in the aggregate).

Indeed, the penal sum serves as an all-encompassing limitation of the surety's potential liability; it represents the most that can be recovered against the surety. American Sur. Co. of New York v. Westinghouse Elec. Mfg. Co., 296 U.S. 133, 137, 56 S. Ct. 9, 11 (1935) ("In any suit upon the bond . . . the nominated penalty was to be the limit of recovery."); see also Transamerica Premier Ins. Co. v. Ober, 894 F. Supp. 471, 482 (D. Me. 1995) (recovery limited to the penal sum of the bond); Pennsylvania Fire Ins. Co. v. American Airlines, Inc., 180 F. Supp. 239, 241 (E.D.N.Y. 1960) ("It is fundamental and long settled that a surety's obligation is limited to the face amount of the bond."); Bill Curphy Co. v. Elliott, 207 F.2d 103, 106 (5th Cir. 1953) (recognizing the well-established rule that "the sole object of stating the penalty in a bond

14

is to fix the limit of the liability of the signers, and no recovery can be had on such bond against the . . . surety beyond the penalty named in the bond").

The Massachusetts Supreme Judicial Court has specifically stated that a surety bond is a contract and its terms set the limits of the surety's liability. Peerless, 397 Mass. at 327. Moreover, the fact that a bond is required by statute does nothing to alter the settled principles of contract and suretyship law. Peerless, 397 Mass. at 327 ("That this is a statutory bond does not 'enlarge the risk' which the bonding company has undertaken"), quoting Treasurer & Receiver Gen. v. Massachusetts Bonding & Ins. Co., 349 Mass. 256, 258 (1965).

In addition to the common law, the Takeover Agreement (¶12) further provides:

> Eastern agrees that the total liability of the Hartford under this Agreement and under the Performance Bond[] for obligations relating to completion of S&R's work including corrections to previously performed work and warranty work shall be limited to and shall not exceed the bond penalty of the Performance Bond[]. All payments made by the Hartford for performance of work, payment of damages or otherwise, shall be credited against the bond penalty of the Performance Bond[]. Nothing in this Agreement constitutes a waiver of such bond penalty, or an increase in the liability of the Hartford under the Performance Bond[].

(See Judd Aff., Exhibit J) (emphasis added).

It is undisputed that Hartford expended $92,346.00 more than the penal sum in fulfilling its obligations under the Takeover Agreement. (Hartford's Statement, ¶28). Given the fact that Hartford expended amounts in excess of the penal sum of the Spencer Bond, as a matter of law, Hartford has no further liability to Eastern and Eastern is not entitled to seek any damages against Hartford arising out of the Spencer Project. Therefore, Hartford is entitled to summary judgment on all claims by Eastern arising out of the Spencer Project.

## V. CONCLUSION

For the forgoing reasons, Hartford respectfully requests that the Court enter summary judgment in Hartford's favor on Count VII of its Complaint for Declaratory Relief and an Order declaring that Hartford is discharged from all obligations and liability under surety bonds issued with respect to the Lynnfield and Normandin Projects, and on Counts I and II of Eastern's Counterclaim as they pertain to the Spencer Project.

> Respectfully submitted,
>
> Hartford Fire Insurance Company,
>
> By its attorneys,
>
> /s/ Eric H. Loeffler _____
> Bradford R. Carver, BBO #565396
> Eric H. Loeffler, BBO #641289
> Cetrulo & Capone LLP
> Two Seaport Lane, 10th Floor
> Boston, MA 02210
> (617) 217-5500