UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY,<br><br>　　　　Plaintiff,<br><br>v.<br><br>EASTERN CONTRACTORS, INC.,<br><br>　　　　Defendant.<br><br>EASTERN CONTRACTORS, INC.,<br><br>　　　　Third Party Plaintiff,<br><br>v.<br><br>CITY OF LAWRENCE, CITY OF FALL RIVER and FREETOWN/LAKEVILLE REGIONAL SCHOOL DISTRICT,<br><br>　　　　Third Party Defendants. | CIVIL ACTION NO. 03-12502-NMG |

**HARTFORD FIRE INSURANCE COMPANY'S STATEMENT
OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT**

　　Now comes the plaintiff, Hartford Fire Insurance Company ("Hartford"), pursuant to Local Rule 56.1 (D. Mass.), and identifies the following material facts of record as to which there is no genuine issue to be tried.

　　1.　　At all times relevant to this action, Hartford has been in the business of, among other things, issuing performance and payment surety bonds to various contractors to secure their performance on various construction projects. (See Affidavit of Gary A. Judd (hereinafter, "Judd Aff."), ¶2).

1

**The Lynnfield Middle School and Normandin Middle School Projects**

2. On or about July 2, 2001, Eastern Contractors, Inc. ("Eastern"), entered into a written subcontract ("the Lynnfield Subcontract") with S&R Construction Co., Inc. ("S&R"), which called for S&R to perform certain site work at the construction of the New Lynnfield Middle School in Lynnfield, Massachusetts ("the Lynnfield Project"). (See Judd Aff., ¶3).

3. On or about October 26, 2001, Hartford, as surety, issued a Subcontract Performance Bond on behalf of S&R, as principal, for the benefit of Eastern, as obligee, relative to the Lynnfield Subcontract and Project ("the Lynnfield Bond"). (See Judd Aff., ¶4).

4. On or about November 9, 2001, Eastern entered into a written subcontract ("the Normandin Subcontract") with S&R, which called for S&R to perform certain site work at the construction of the Normandin Middle School in New Bedford, Massachusetts ("the Normandin Project"). (See Judd Aff., ¶5).

5. On or about November 29, 2001, Hartford, as surety, issued a Subcontract Performance Bond on behalf of S&R, as principal, for the benefit of Eastern, as obligee, relative to the Normandin Subcontract and Project ("the Normandin Bond"). (See Judd Aff., ¶6).

6. The forms of the Lynnfield and Normandin Bonds were authored by the American Institute of Architects ("AIA") and are both known as "A311" bond forms. (See Judd Aff., ¶7 and Exhs. B and D).

7. The Lynnfield and Normandin Bonds include the following language:

> Whenever Principal shall be, and be declared by Obligee to be in default under the Subcontract, the Obligee having performed Obligee's obligations thereunder:
>
> (1) Surety may promptly remedy the default subject to the provisions of paragraph 3 herein, or;
>
> (2) Obligee after reasonable notice to Surety may, or Surety upon demand of Obligee may arrange for the performance of Principal's obligation under the subcontract subject to the provisions of paragraph 3 herein;
>
> (3) The balance of the subcontract price, as defined below, shall be credited against the reasonable cost of completing performance of the subcontract. . . .

(See Judd Aff., ¶8 and Exhs. B and D).

8. On or about September 24, 2002, Eastern, through its counsel, sent a letter to S&R and Hartford regarding, among other projects, S&R's alleged breaches on the Normandin and Lynnfield Projects. In the September 24, 2002 letter, Eastern took the position that all of the events referenced in the September 24, 2002 letter constituted events of default under the Normandin and Lynnfield Subcontracts. (See Judd Aff., ¶9).

9. In the September 24, 2002 letter, Eastern further demanded that S&R and Hartford cure the defaults and otherwise fulfill the obligations under the Normandin and Lynnfield Subcontracts. Eastern further requested a meeting between representatives of Hartford, S&R and Eastern "to review the status of the default under the subcontracts." (See Judd Aff., ¶10 and Exh. E).

10. On or about September 30, 2002, representatives of Hartford, S&R and Eastern met to discuss, among other projects between S&R and Eastern that were bonded by Hartford, the Lynnfield and Normandin Projects. (See Judd Aff., ¶11).

3

11. At the conclusion of the meeting, S&R agreed to provide additional manpower and equipment at the Lynnfield and Normandin Projects and to keep all parties, including Hartford, informed as to the progress of the work by written report. (See Judd Aff., ¶12).

12. Unbeknownst to Hartford, on or about January 9, 2003, Eastern and S&R entered into a written agreement pertaining to S&R's work on the Normandin and Lynnfield Projects ("the January 9, 2003 Agreement"). (See Judd Aff., ¶13).

13. Hartford was not notified of, or consulted with, concerning the January 9, 2003 Agreement. (See Judd Aff., ¶14).

14. Pursuant to the January 9, 2003 Agreement, Eastern released S&R "of all future contractual obligations for incomplete work" on the Normandin and Lynnfield Projects. (See Judd Aff., ¶15 and Exh. F).

15. While Hartford was not a party to the January 9, 2003 Agreement, the January 9, 2003 Agreement provided that S&R and Hartford will remain responsible for certain payments to subcontractors and "any corrective work deemed to be redone at no additional cost." (See Judd Aff., ¶16 and Exh. F).

16. In or about January 2003, Eastern took over the work of S&R on the Lynnfield and Normandin Projects. (See Judd Aff., ¶17).

17. On or about March 4, 2003, Eastern, through its counsel, sent a letter to S&R and Hartford terminating the Normandin and Lynnfield Subcontracts. (See Judd Aff., ¶18). By that time, however, Eastern had already undertaken to perform the work of S&R on the Normandin and Lynnfield Projects. (Id.).

**The Spencer Borden Elementary School Project**

18.     On or about June 14, 2001, Eastern entered into a written subcontract ("the Spencer Subcontract") with S&R, which called for S&R to perform certain site work at the construction of the Spencer Borden Elementary School in Fall River, Massachusetts ("the Spencer Project").  (See Judd Aff., ¶19).

19.     The original contract amount for the Spencer Subcontract was $1,173,000.00.  (See Judd Aff., ¶20).

20.     On or about August 1, 2001, Hartford, as surety, issued a Subcontract Performance Bond on behalf of S&R, as principal, for the benefit of Eastern, as obligee, relative to the Spencer Subcontract and Project ("the Spencer Bond").  (See Judd Aff., ¶21).

21.     The penal sum of the Spencer Bond is $1,173,000.00.  (See Judd Aff., ¶22).

22.     On or about March 4, 2003, Eastern, through its counsel, sent a letter to S&R and Hartford terminating the Spencer Subcontract.  (See Judd Aff., ¶23).

23.     On or about May 16, 2003, Hartford and Eastern executed a Takeover Agreement ("the Takeover Agreement"), pursuant to which Hartford agreed to arrange for completion of S&R's work on the Spencer Project.  (See Judd Aff., ¶24).  Thereafter, Hartford commenced that work utilizing the services of ROC Construction Co., Inc. ("ROC") as its completion contractor.  (Id.).

24.     Pursuant to the Takeover Agreement (¶11), Eastern agreed that remaining contract balances on the Spencer Project would be periodically paid to Hartford.  (See Judd Aff., ¶25).

25. Despite that express commitment, and despite Hartford's submission of requisitions, Eastern never remitted any payment of the subcontract balance to Hartford. (See Judd Aff., ¶26).

26. The Takeover Agreement (¶12) further provided:

> Eastern agrees that the total liability of the Hartford under this Agreement and under the Performance Bond[] for obligations relating to completion of S&R's work including corrections to previously performed work and warranty work <u>shall be limited to and shall not exceed the bond penalty of the Performance Bond</u>[]. All payments made by the Hartford for performance of work, payment of damages or otherwise, shall be credited against the bond penalty of the Performance Bond[]. Nothing in this Agreement constitutes a waiver of such bond penalty, or an increase in the liability of the Hartford under the Performance Bond[].

(See Judd Aff., ¶27 and Exh. J) (emphasis added).

27. As the work was nearing completion in August 2003, Eastern ordered Hartford to cease all work on the Spencer Project. Eastern then arranged for completion of the Spencer Project utilizing its own forces and retained the contract balances on the Spencer Project. (See Judd Aff., ¶28).

28. In arranging for completion of the work under the Takeover Agreement, Hartford expended $1,265,346.00, or $92,346.00 more than the penal sum of the Spencer Bond. (See Judd Aff., ¶29).

        Respectfully submitted,

        HARTFORD FIRE INSURANCE COMPANY,

        By its attorneys,


        /s/ Eric H. Loeffler_____
        Bradford R. Carver, BBO #565396
        Eric H. Loeffler, BBO #641289
        Cetrulo & Capone LLP
        Two Seaport Lane, 10th Floor
        Boston, MA 02210
        (617) 217-5500