UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>EASTERN CONTRACTORS, INC.,<br><br>    Defendant.<br><br>EASTERN CONTRACTORS, INC.,<br><br>    Third Party Plaintiff,<br><br>v.<br><br>CITY OF LAWRENCE, CITY OF FALL RIVER and FREETOWN/LAKEVILLE REGIONAL SCHOOL DISTRICT,<br><br>    Third Party Defendants. | CIVIL ACTION NO. 03-12502-NMG |

## AFFIDAVIT OF GARY A. JUDD

I, Gary A. Judd, having been duly sworn, hereby depose and state as follows:

1.    I am employed by The Hartford Fidelity & Bonding Company, and I have full authority to adjust, manage and prosecute claims on behalf of Hartford Fire Insurance Company ("Hartford") in this lawsuit. I make the statements that follow on personal knowledge or on the basis of the business records of Hartford, of which I am the keeper.

2.    At all times relevant to this action, Hartford has been in the business of, among other things, issuing performance and payment surety bonds to various contractors to secure their performance on various construction projects.

1

**The Lynnfield Middle School and Normandin Middle School Projects**

3.  On or about July 2, 2001, Eastern Contractors, Inc. ("Eastern"), entered into a written subcontract ("the Lynnfield Subcontract") with S&R Construction Co., Inc. ("S&R"), which called for S&R to perform certain site work at the construction of the New Lynnfield Middle School in Lynnfield, Massachusetts ("the Lynnfield Project"). A true and correct copy of the Lynnfield Subcontract is attached hereto as Exhibit A.

4.  On or about October 26, 2001, Hartford, as surety, issued a Subcontract Performance Bond on behalf of S&R, as principal, for the benefit of Eastern, as obligee, relative to the Lynnfield Subcontract and Project ("the Lynnfield Bond"). A true and correct copy of the Lynnfield Bond is attached hereto as Exhibit B.

5.  On or about November 9, 2001, Eastern entered into a written subcontract ("the Normandin Subcontract") with S&R, which called for S&R to perform certain site work at the construction of the Normandin Middle School in New Bedford, Massachusetts ("the Normandin Project"). A true and correct copy of the Normandin Subcontract is attached hereto as Exhibit C.

6.  On or about November 29, 2001, Hartford, as surety, issued a Subcontract Performance Bond on behalf of S&R, as principal, for the benefit of Eastern, as obligee, relative to the Normandin Subcontract and Project ("the Normandin Bond"). A true and correct copy of the Normandin Bond is attached hereto as Exhibit D.

7.  The forms of the Lynnfield and Normandin Bonds were authored by the American Institute of Architects ("AIA") and are both known as "A311" bond forms. (See Exhibits B and D).

8. The Lynnfield and Normandin Bonds include the following language:

> Whenever Principal shall be, and be declared by Obligee to be in default under the Subcontract, the Obligee having performed Obligee's obligations thereunder:
>
> (1) Surety may promptly remedy the default subject to the provisions of paragraph 3 herein, or;
>
> (2) Obligee after reasonable notice to Surety may, or Surety upon demand of Obligee may arrange for the performance of Principal's obligation under the subcontract subject to the provisions of paragraph 3 herein;
>
> (3) The balance of the subcontract price, as defined below, shall be credited against the reasonable cost of completing performance of the subcontract. . . .

(See Exhibits B and D).

9. On or about September 24, 2002, Eastern, through its counsel, sent a letter to S&R and Hartford regarding, among other projects, S&R's alleged breaches on the Normandin and Lynnfield Projects. In the September 24, 2002 letter, Eastern took the position that all of the events referenced in the September 24, 2002 letter constituted events of default under the Normandin and Lynnfield Subcontracts. A true and correct copy of the September 24, 2002 letter from Edward J. Quinlan, Esq. is attached hereto as Exhibit E.

10. In the September 24, 2002 letter, Eastern further demanded that S&R and Hartford cure the defaults and otherwise fulfill the obligations under the Normandin and Lynnfield Subcontracts. Eastern further requested a meeting between representatives of Hartford, S&R and Eastern "to review the status of the default under the subcontracts." (See Exhibit E).

11. On or about September 30, 2002, representatives of Hartford, S&R and Eastern met to discuss, among other projects between S&R and Eastern that were bonded by Hartford, the Lynnfield and Normandin Projects.

3

12. At the conclusion of the meeting, S&R agreed to provide additional manpower and equipment at the Lynnfield and Normandin Projects and to keep all parties, including Hartford, informed as to the progress of the work by written report.

13. Unbeknownst to Hartford, on or about January 9, 2003, Eastern and S&R entered into a written agreement pertaining to S&R's work on the Normandin and Lynnfield Projects ("the January 9, 2003 Agreement"). A true and correct copy of the January 9, 2003 Agreement between Eastern and S&R is attached hereto as Exhibit F.

14. Hartford was not notified of, or consulted with, concerning the January 9, 2003 Agreement.

15. Pursuant to the January 9, 2003 Agreement, Eastern released S&R "of all future contractual obligations for incomplete work" on the Normandin and Lynnfield Projects. (See Exhibit F).

16. While Hartford was not a party to the January 9, 2003 Agreement, the January 9, 2003 Agreement provided that S&R and Hartford will remain responsible for certain payments to subcontractors and "any corrective work deemed to be redone at no additional cost." (See Exhibit F).

17. In or about January 2003, Eastern took over the work of S&R on the Lynnfield and Normandin Projects.

18. On or about March 4, 2003, Eastern, through its counsel, sent a letter to S&R and Hartford terminating the Normandin and Lynnfield Subcontracts. At true and correct copy of the March 4, 2003 letter from Edward J. Quinlan, Esq. is attached hereto as Exhibit G. By that time, however, Eastern had already undertaken to perform the work of S&R on the Normandin and Lynnfield Projects.

**The Spencer Borden Elementary School Project**

19.  On or about June 14, 2001, Eastern entered into a written subcontract ("the Spencer Subcontract") with S&R, which called for S&R to perform certain site work at the construction of the Spencer Borden Elementary School in Fall River, Massachusetts ("the Spencer Project").  At true and correct copy of the Spencer Subcontract is attached hereto as Exhibit H.

20.  The original contract amount for the Spencer Subcontract was $1,173,000.00.

21.  On or about August 1, 2001, Hartford, as surety, issued a Subcontract Performance Bond on behalf of S&R, as principal, for the benefit of Eastern, as obligee, relative to the Spencer Subcontract and Project ("the Spencer Bond").  A true and correct copy of the Spencer Bond is attached hereto as Exhibit I.

22.  The penal sum of the Spencer Bond is $1,173,000.00.  (See Exhibit I).

23.  On or about March 4, 2003, Eastern, through its counsel, sent a letter to S&R and Hartford terminating the Spencer Subcontract.  (See Exhibit G).

24.  On or about May 16, 2003, Hartford and Eastern executed a Takeover Agreement ("the Takeover Agreement"), pursuant to which Hartford agreed to arrange for completion of S&R's work on the Spencer Project.  A true and correct copy of the Takeover Agreement is attached hereto as Exhibit J.  Thereafter, Hartford commenced that work utilizing the services of ROC Construction Co., Inc. ("ROC") as its completion contractor.

25.  Pursuant to the Takeover Agreement (¶11), Eastern agreed that remaining contract balances on the Spencer Project would be periodically paid to Hartford.

26.  Despite that express commitment, and despite Hartford's submission of requisitions, Eastern never remitted any payment of the subcontract balance to Hartford.

27.  The Takeover Agreement (¶12) further provided:

> Eastern agrees that the total liability of the Hartford under this Agreement and under the Performance Bond[] for obligations relating to completion of S&R's work including corrections to previously performed work and warranty work <u>shall be limited to and shall not exceed the bond penalty of the Performance Bond</u>[]. All payments made by the Hartford for performance of work, payment of damages or otherwise, shall be credited against the bond penalty of the Performance Bond[]. Nothing in this Agreement constitutes a waiver of such bond penalty, or an increase in the liability of the Hartford under the Performance Bond[].

(<u>See</u> <u>Exhibit J</u>) (emphasis added).

28. As the work was nearing completion in August 2003, Eastern ordered Hartford to cease all work on the Spencer Project. Eastern then arranged for completion of the Spencer Project utilizing its own forces and retained the contract balances on the Spencer Project.

29. In arranging for completion of the work under the Takeover Agreement, Hartford expended $1,265,346.00, or $92,346.00 more than the penal sum of the Spencer Bond. A true and correct copy of Hartford's summary of payments on the Spencer Project is attached hereto as <u>Exhibit K</u>.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY ON THIS 15th DAY OF JUNE, 2005.

/s/ Gary A. Judd_____
Gary A. Judd
Hartford Fire Insurance Company

01154-0011
377114v1