# TAKEOVER AGREEMENT
## (Wm Greene and Spencer Borden)

This Agreement is made in duplicate as of this 16th day of May 2003 by and between Eastern Contractors, Inc. (hereinafter "Eastern") and Hartford Fire Insurance Company (hereinafter the "Hartford").

## RECITALS

WHEREAS, on or about April 6, 2001, Eastern entered into a subcontract with S&R Construction Co., Inc. (hereinafter "Principal") for site work in connection with Eastern's contract with the City of Fall River, Massachusetts for the construction of the William Greene Elementary School (the "Wm. Greene Project"); and

WHEREAS, on or about June 14, 2001, Eastern entered into another subcontract with S&R Construction Co., Inc. (hereinafter "Principal") for site work in connection with Eastern's contract with the City of Fall River, Massachusetts for the construction of the Spencer Borden Elementary School (the "Spencer Borden Project"); and

WHEREAS Eastern has administered the separate subcontract for the Wm. Greene Project and the separate subcontract for the Spencer Borden Project as a combined subcontract that Eastern references as Fall River (hereinafter called the "Subcontract"); and

WHEREAS, the subcontract agreement(s) and the general contract documents including but not limited to plans, specifications, general and special conditions and other provisions relating to performance of Principal's work on both the Wm. Greene

RECEIVED
JUN 02 '03
BOND DEPT.

Project and the Spencer Borden Project are incorporated by reference herein and may be referred to jointly as the Subcontract Documents.

WHEREAS, the contract documents for the Wm. Greene Project and the Spencer Borden Project required both projects to achieve substantial completion not later than Oct 14, 2002 and both projects have reached the stage of substantial completion with the exception of Site Work and the Demolition of the old Spencer Borden School effective January 4, 2003.

WHEREAS, the Hartford executed and delivered to Eastern a Subcontract Performance Bond and a Subcontract Labor and Material Payment Bond, No. 02BCSAA8196, each in the penal sum of $475,000, for the Wm. Greene Project, and a Subcontract Performance Bond and Subcontract Labor and Material Payment Bond, No. 02BCSAP4608, each in the penal sum of $1,173,000, for the Spencer Borden Project (all bonds referred to hereinafter as "Bonds" unless otherwise designated), which Bonds are incorporated herein by reference; and

WHEREAS, Eastern, at various times, notified Hartford and S&R that S&R was in default of its obligations under the Subcontract and on March 4, 2003 Eastern issued a notice of termination for default of the Subcontract; and

WHEREAS, in response to the notices from Eastern and in response to claims from unpaid suppliers and subcontractors, the Hartford, on February 25, 2003 directed Eastern not to make any further payments to the Principal without the written consent

- 2 -

of the Hartford; and

WHEREAS, Eastern has made a demand on the Hartford to arrange for completion of the Subcontract; and

WHEREAS, certain disputes exist between Eastern and the Principal/the Hartford, but the Hartford nonetheless wishes to arrange for completion of the Subcontract to preserve continuity of performance and to expedite completion of the Subcontract, while reserving each others' respective rights concerning such disputes; and

WHEREAS, the Hartford and Eastern desire to enter into this Agreement pursuant to its terms.

NOW THEREFORE, in consideration of the agreements and undertakings set forth in this Agreement, and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, Eastern and the Hartford agree as follows:

1.  The Hartford, under its Performance Bonds, agrees to perform and complete the Subcontract either itself or through its agents or independent contractors (Completion Contractor) in accordance with the Contract Documents, as may have been amended and modified. Obligee will cooperate with and assist Hartford to determine the remaining work to be completed under the Subcontract. Notwithstanding Obligee's cooperation and assistance, Hartford shall be responsible to determine the extent of Principal's Subcontract work remaining to be completed or corrected and to complete

incomplete work and/or correct work not in conformity with the Subcontract Documents including any obligations of warranty. Eastern acknowledges that the Hartford, by its execution of this Agreement, and by arranging for completion of the Subcontract and Project, is acting in its capacity as the surety for the Principal, and not as a completing contractor.

2. During the Hartford's efforts to select a Completion Contractor, Eastern reserves the right to perform any portions of the Subcontract deemed to be of essential importance by Eastern, either with its own forces or other subcontractors on such terms and conditions as Eastern deems appropriate but recognizing its duty to mitigate damages (hereinafter "Interim Work"). To the extent that Eastern deems it necessary to perform any Interim Work it will provide reasonable advance written notice to the Hartford of the necessity for such Interim Work. The Hartford shall have twenty-four (24) hours from the receipt of such notice to arrange for completion of the Interim Work. If the Hartford does not respond within twenty-four (24) hours, or if the Hartford declines to perform the Interim Work, Eastern reserves the right to complete such Interim Work and will maintain adequate books and records verifying the costs of such Interim Work.

3. Eastern represents to the Hartford and agrees that, as of March 4, 2003:

(a) The authorized amount of the separate subcontract for the Wm. Greene Project was $475,000 and that the subcontract amount for the Wm. Greene Project

was increased by agreed Change Orders 1, 2, and 3 to an adjusted contract amount of $843,700.97;

(b)  The authorized amount of the separate subcontract for the Spencer Borden Project was $1,173,000.00 and that the subcontract amount for the Spencer Borden contract was increased by agreed Change Orders 1, 2, and 3 to an adjusted contract amount of $1,699,161.50;

(c)  Eastern has previously made partial payments to S&R on the Subcontract in the amount of $2,186,987.00. Eastern states that partial payments of the revised Subcontract amount of $2,186,987.00 have been made to S&R for work performed based upon periodic payment requests submitted by S&R to Eastern by which payment requests S&R represented and certified to Eastern the value of work performed by Principal was $2,186,987.00 which was paid to Principal directly.

(d)  Eastern has issued joint checks to S&R and certain of its subcontractors and suppliers in the amount or $96,443.00. A list of entities that received joint checks is attached hereto as Exhibit A.

(e)  The remaining Subcontract balance, including retainage, is $259,432.47 which amount, subject to the terms of this Agreement, is hereby recommitted to the completion of the Subcontract (hereinafter "Subcontract Balance").

5



4.  Eastern and Hartford agree that the Subcontract Balance is subject to adjustment based on the following change order requests that were proposed by Eastern to S&R but have not been accepted by S&R (hereinafter "S&R Pending Change Orders"):

    C.O. 4 (Wm. Greene Project):    ($23,000.00)

    C.O. 5 (Wm. Greene Project):    ($ 7,020.00)  Rocchio

    C.O. 4 (Spencer Borden Project):    ($110,013.10) Century Paving (roadway, parking, playground, sidewalk)

    C.O. 5 (Spencer Borden Project):    $20,108.00  Century Paving (dock, parking, handicap)

Eastern and Hartford agree that the Subcontract Balance will be adjusted by the amount of S&R Pending Change Orders that is ultimately agreed upon between the Hartford and Eastern. Eastern reserves its rights as to whether an adjustment of the remaining Subcontract balance for these pending change orders will result in payment of any additional compensation to Hartford or Principal.

5.  Eastern acknowledges that S&R has submitted to Eastern the following claims for extra work or time extensions that have not yet been resolved (hereinafter "S&R Extra Work Claims"):

[None Known]

Eastern agrees that the Subcontract Balance will be adjusted by the amount of S&R Extra Work Claims that are approved and paid by the Project Owner.

6. In addition to any possible Interim Work, Eastern claims that to continue or complete performance on the Project it has performed additional work and/or has incurred additional expenses and costs which are backcharges against the Subcontract Balance (hereinafter "Eastern Backcharges"). Eastern agrees to provide to the Hartford all appropriate documentation verifying the amount of the Eastern Backcharges. The Hartford and Eastern shall attempt to resolve through good faith negotiation the proper amount of the Eastern Backcharges and Interim Work. Meetings to resolve these items shall be held and completed as soon as possible. Such items shall be reviewed and negotiated on an item by item basis and agreement on all items shall not be required. To the extent Eastern and the Hartford agree on the values of Eastern Backcharges and Interim Work, that amount may be withdrawn from the Subcontract Balance. If Eastern and the Hartford can not agree on the amount of the Eastern Backcharges and Interim Work, the dispute will be resolved in accordance with paragraph 17 herein.

7. The Hartford shall be represented at each project by Anthony Branca of PI Associates Consultants, P. O. Box 148, Sharon, MA 02067 (hereinafter the "Authorized Individual"). The Authorized Individual shall be assigned full-time as needed to each project and will represent the Hartford in dealing with Eastern on day to day construction issues with respect to each project. Hartford further agrees that Mr. Branca will attend such meetings with the Project Owners, Architects and/or Construction Managers as Eastern may reasonably deem necessary to advise as to the Hartford's

efforts towards completion of S&R's Subcontract, work schedule or other matters. Eastern will furnish Mr. Branca with forty-eight (48) hours advance notice of such meetings. The Hartford hereby designates the Authorized Individual to work with Eastern in preparing pay requisitions on the Subcontract. However, the Hartford will sign all pay requisitions submitted to Eastern. Payments from Eastern shall be made payable to the Hartford and transmitted to the Hartford at the addresses listed below, unless and until Eastern is notified in writing of any different addresses.

8.  The Authorized Individual is authorized to take such actions as are necessary and prudent to obtain completion of the Subcontract and Eastern may contact the Authorized Individual to confer regarding performance of the Subcontract, scheduling of work and other details concerning completion of the Subcontract. The Authorized Individual has authority to negotiate deductive change orders, credits, backcharges or net additions or deductions from the Subcontract or the Subcontract Balance so long as such change orders, credits, backcharges or net additions or deductions do not exceed $10,000.00. Any work that exceeds $10,000.00 must be approved in writing by the Hartford. Any agreements with respect to the warranty work of the Principal or corrective work as a result of latent defect in the work performed by the Principal shall require the written approval of the Hartford. Should Mr. Branca advise Eastern that an issue or matter is beyond the extent of his authority, Hartford shall take all actions

necessary to respond and resolve such matter within a reasonable time of presentation of such issue or matter.

9. To the extent of Eastern's right, title or interest therein, Eastern agrees, without making any warranties or representations as to the materials and equipment on site, that the Hartford, or Completion Contractor, will have the right to use and/or incorporate into the work, without charge, any and all equipment, supplies, materials and appurtenances furnished or supplied to Eastern or the Principal which are stored on or about the premises of the Project, or stored at warehouses.

10. The Hartford will select the Completion Contractor as expeditiously as possible and will direct the Completion Contractor to promptly commence its work on the Project. The Hartford will require the Completion Contractor to use its best efforts to obtain the substantial completion of the Subcontract work remaining within the time specified in the Subcontract Documents, subject to appropriate extensions of time as may be permitted by the Project owner under the Subcontract Documents. Eastern's consent to utilization of the Completion Contractor will not be unreasonably withheld. Eastern's consent to the use of the Completion Contractor shall not be deemed an endorsement of the standing and ability of the Completion Contractor nor shall such consent be deemed a waiver of Eastern's rights or remedies with regard to the performance of the work by the Completion Contractor. Eastern shall not be responsible for the acts and omissions of the Completion Contractor. Hartford shall

require the Completion Contractor to furnish evidence to Eastern prior to commencement of any work that such contractor satisfies and fulfills all requirements of the Subcontract Documents including but not limited to supervision, insurance and other requirements of the Subcontract Documents. Eastern shall not have any contractual relationship with such Completion Contractor who shall at all relevant times be deemed to be under contract with Hartford.

11.   In accordance with the terms of the Subcontract, and as otherwise provided by this agreement, Eastern agrees to pay the Hartford the amount due from monthly progress estimates submitted by the Hartford. Payment to Hartford of the remaining Subcontract balance (including retainage) shall be subject to adjustment for increases and decreases for agreed Change Orders approved by the Project Owner as the work progresses, subject to adjustment for increases or decreases of money for reserved claims as resolved. The payment of said monies to Hartford under this paragraph shall be made in accordance with the terms of the Subcontract and this agreement as to time, amounts and methods of payment.

12.   Eastern agrees that the total liability of the Hartford under this Agreement and under the Performance Bonds for obligations relating to completion of S&R's work including corrections to previously performed work and warranty work shall be limited to and shall not exceed the bond penalty of the Performance Bonds. All payments made by the Hartford for performance of work, payment of damages or otherwise, shall be

credited against the bond penalty of the Performance Bonds. Nothing in this Agreement constitutes a waiver of such bond penalty, or an increase in the liability of the Hartford under the Performance Bonds.

13. The Hartford's Payment Bonds shall remain in full force and effect in accordance with its terms and provisions. Nothing in this Agreement constitutes a waiver of the bond penalty under the Payment Bonds, or an increase in the liability of the Hartford under the Payment Bonds. The Obligee acknowledges that the Hartford has the sole and unfettered discretion to settle, compromise and otherwise independently handle any and all claims against the Payment Bonds.

14. Eastern and the Hartford acknowledge that there are claims alleged and defenses asserted by the Principal and the Hartford against Eastern, and claims alleged and defenses asserted by Eastern against the Principal and Hartford, which are preserved by the Principal, Hartford and Eastern under this Agreement.

15. By execution of this Agreement, Eastern agrees that the Hartford does not waive the rights of the Hartford or Principal, if any, to contest the validity of the termination by Eastern of the Subcontract with the Principal, or of any other rights that the Principal may have against the Eastern; and Eastern likewise reserves all claims, rights and defenses which it may have against the Principal. If the Principal contests the validity of the termination, however, and if it is determined by an appropriate forum that the



termination was not proper, then the Hartford reserves all of its rights against Eastern as may arise from such determination.

16. In addition to claims referred to above, Eastern reserves its claims for any costs which it has or may accrue for increased manpower, overtime, equipment costs or other acceleration costs incurred by Eastern or subcontractors in order to achieve schedule recovery for work which has been delayed by the failure of performance of S&R. Hartford reserves all rights in connection with any such claims.

17. Eastern and the Hartford agree to submit any disputes under this agreement to non-binding mediation; each party to bear their own costs, except the cost of any mediator, which costs shall be split equally between Eastern and the Hartford. In the event mediation is not successful then any disputes shall be submitted to the Business Litigation Session of the Suffolk Superior Court, Boston, Massachusetts, which court shall have jurisdiction over such disputes.

18. Except for the reservation of rights and defenses as set forth herein, this Agreement is solely for the benefit of Eastern and the Hartford. Eastern and the Hartford do not intend by any provision of this Agreement to create any rights in or to increase the rights of any third-party beneficiaries, nor to confer any benefit upon or grant enforceable rights under this Agreement or otherwise to anyone other than Eastern and the Hartford. Eastern and the Hartford acknowledge that nothing in this



Agreement shall extend or increase the rights, if any, of any third-party claimants, under the Performance Bonds or Payment Bonds.

19. Eastern agrees to provide, upon reasonable request, access to all non-privileged documents and other non-privileged information relating to the Subcontract and to each project to the Hartford, including without limitation, all documents and other information relating to the work performed to date and the work not performed to date, and/or relating to the Principal, and/or relating to claimants who submit claims under its Payment Bonds for each project. Access to such documents shall be provided during normal business hours and Eastern shall cooperate with any arrangements to comply with Hartford's reasonable request for copies of documents to be made at Hartford's expense.

20. Hartford hereby agrees to indemnify the Obligee against any loss, cost or expense, including reasonable attorneys' fees and costs, of any claim or lawsuit by Principal or by any person, firm, corporation or governmental entity, that arises strictly on account of payment by the Obligee to Hartford of any amounts set forth in this Agreement, the conditions of the foregoing indemnity being:

    (a)    The amount of indemnity shall be limited to the total amounts paid by the Obligee to the Hartford under this Agreement;

    (b)    The Obligee shall promptly notify Hartford of any such claim or lawsuit; and

(c)   Hartford shall have the right, but not the obligation, to resolve all such claims and to control and defend all such lawsuits through counsel of Hartford's selection after consultation and consent of Obligee which consent shall not be unreasonably withheld.

21.   This Agreement constitutes the whole of the understandings, discussions and agreements by and between Eastern and the Hartford. Eastern and the Hartford acknowledge that there have been no oral, written or other agreements of any kind as a condition precedent to, or to induce the execution and delivery of, this Agreement. Any written or oral discussions conducted prior to the effective date of this Agreement shall not in any way vary or alter the terms of this Agreement.

22.   This Agreement may not be changed, amended or altered in any way except by a writing executed by both Eastern and the Hartford. This Agreement shall be governed and controlled by the laws of the Commonwealth of Massachusetts. This Agreement shall inure to the benefit of and be binding upon the parties hereto and their successors and assigns.

23.   Any Notices given by Eastern or the Hartford under this Agreement or the Bonds shall be addressed as follows:

As to the Owner:

Suresh Bhatia
Eastern Contractors, Inc.
571 Union Avenue

As to the Hartford:

Williams Jarvis
Bond Claim Department
The Hartford Fire Insurance Co.

|  |  |
|---|---|
| Framingham, MA 01702<br>Phone: 508-820-4401<br>Fax: 508-879-9633 | Hartford Plaza D-4<br>Hartford, CT 06115<br>Phone: 860-547-8239<br>Fax: 860-547-8265 |

24.  This Agreement may be executed in counterparts, and it shall be effective when both the Hartford and Eastern have executed their respective counterparts.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date indicated above, and each of the undersigned individuals personally represent and warrant that they have the full right, power and authority to execute this Agreement on behalf of the respective parties:

Witness

By: _____

EASTERN CONTRACTORS, INC.

By: _____

Attest:

By: _____

286062v3

HARTFORD FIRE INSURANCE CO.

By: _____
Name

EXHIBIT A
To
TAKEOVER AGREEMENT
(Wm Greene and Spencer Borden)

Joint checks issued by Eastern Contractors, Inc. to S&R Construction Inc. and certain of its subcontractors and suppliers (per ECI Accounts Payable Check Register by Job dated 04-08-2003):

| Check | Check Date | Amount Paid | Payee |
|---|---|---|---|
| 48214 | 09-30-2002 | $10,474.00 | S&R Construction and G. Lopes Construction |
| 48218 | 09-30-2002 | $5,940.00 | S&R Construction and L.V.M. J. Corp. |
| 48219 | 09-30-2002 | $3,684.00 | S&R Construction and Lebaron |
| 48224 | 09-30-2002 | $8,170.00 | S&R Construction and Rambone Bros. LLC |
| 48225 | 09-30-2002 | $2,310.00 | S&R Construction and Revere General Contr. |
| 49464 | 11-27-2002 | $65,865.00 | S&R Construction and Barlite Construction |
|  | Total | $96,443.00 |  |