UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C. A. NO. 03-12502 NMG

HARTFORD FIRE INSURANCE COMPANY,          )
        Plaintiff                                                      )
                                                                          )
vs.                                                                   )
                                                                          )
EASTERN CONTRACTORS, INC.,                            )
        Defendant/Third Party Plaintiff               )
                                                                          )
vs.                                                                   )
                                                                          )
CITY OF LAWRENCE, CITY OF FALL RIVER    )
and FREETOWN/LAKEVILLE REGIONAL           )
SCHOOL DISTRICT,                                              )
        Third Party Defendants                          )

---

### EASTERN CONTRACTORS, INC.'S CONCISE STATEMENT OF THE MATERIAL FACTS OF RECORD AS TO WHICH IT CONTENDS THAT THERE EXISTS GENUINE ISSUE OF MATERIAL FACT WHICH WILL REQUIRE TRIAL

**II**      **Eastern Contractors, Inc.'s Concise Statement of the Material Facts of Record as to Which It Contends that there Exists Genuine Issue of Material Fact Which Will Require Trial.**

      1.      On June 14, 2001, Eastern and S & R enter into a subcontract for performance of work at the Spencer Borden Elementary School Project (hereinafter Spencer Borden) in Fall River, Massachusetts for the subcontract amount of $1,173,000.00. (See Exhibit H attached to the Judd Affidavit.)

      2.      S & R, among other things, agrees to be bound to Eastern by the terms and conditions of the contract (including plans, specifications, all general

conditions and addenda) executed between Eastern and the City of Fall River. (See Eastern Exhibit A, Affidavit of Ramesh Motwane, exhibit 1C thereto.)

3.  Such general conditions include General Conditions of the Contract for Construction AIA document A-201 (1987 edition) as modified and supplemented in the contract documents. (Pertinent portions of the general conditions of the contract for the Spencer Borden Project, as modified or supplemented, are attached hereto as Eastern Exhibit A, exhibit 2C.)

4.  Among other things, the general conditions of the contract which are incorporated by reference into the subcontract between Eastern and S & R provide that changes may be made to the contract, without invalidating the contract, which changes may increase or decrease the scope of work and the cost of work to be performed. (See Article 7 of the General Conditions, Eastern Exhibit A, exhibit 2D.)

5.  Such general conditions further provide at Article 14 that if the Contractor makes an assignment for the benefit of creditors, if a receiver is appointed, if the contractor persistently or repeatedly refuses or fails to supply enough properly skilled workmen or proper materials, or if the Contractor fails to make prompt payment to subcontractors for materials or labor, or persistently disregards laws, ordinances, rules, regulations or orders of any public authority, or otherwise is guilty of a substantial violation of any provision of the contract, and the contractor shall be in default and subject

to termination within seven (7) days after notice of such default. (See Eastern Exhibit A, exhibit 2D.)

6.   The general contract further provides that no action or failure to act by the Owner, Architect or Contractor shall constitute a waiver of a right or duty of either of them under the contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach thereunder except as may be specifically agreed in writing. (See General Conditions Article 13.4.2., Eastern Exhibit A, exhibit 2C.)

7.   These same conditions apply as between S & R and Eastern through the Subcontract's incorporation by reference provision. (See Eastern Exhibit A, exhibit 1C.)

8.   Hartford issued bond number 02 BCS AP 146108 dated August 1, 2001 in which Eastern Contractors, Inc. is named as the obligee, and S & R Construction Company, Inc. is identified as the Principal to secure the performance of work at the Spencer Borden Project. (See Exhibit I attached to the Judd Affidavit in Hartford's Motion for Summary Judgment).

9.   The Eastern and S & R subcontract is expressly incorporated by reference into the Bond which has the effect of incorporating by reference the terms and conditions of the General Contract. (See Exhibit I attached to the Judd Affidavit.)

10.   On or about November 9, 2001, Eastern and S & R Construction entered into a Subcontract for the work to be performed at the Normandin Middle

- 3 -

School in New Bedford, for the contract sum of $1,450,000.00, using the same form of subcontract which likewise incorporates by reference terms and conditions of the general contract between Eastern and S &R. Construction. (See Eastern Exhibit A, exhibit 1B.)

11.   The New Bedford Project also includes AIA A-201 General Conditions for the Contract of Construction (1987 edition) and includes nearly identical provisions relating to Changes in the Work (Article 7); Default and Termination (Article 14.2); Non-waiver (Article 13.4 .2). (See Eastern Exhibit A, Motwane Affidavit exhibit 2B.)

12.   Hartford issued the identical form of Performance and Payment bonds for the Normandin project dated on or about November 29, 2001 using the so-called A-311 form. (See Exhibit D attached to the Judd Affidavit in Hartford's motion for summary judgment.)

13.   As with the Fall River Project, the bond issued by Hartford for the Normandin Middle School Project incorporates by reference the Subcontract and by extension the general contract plans, specifications and general conditions. (See Exhibit D attached to the Judd Affidavit in Hartford's motion for summary judgment.)

14.   On or about July 2, 2001, Eastern and S & R entered into a subcontract for work at the new Lynnfield Middle School for the amount of $1,487,000.00 using the same form of subcontract. (See Eastern Exhibit A, exhibit 1A .) This subcontract likewise incorporated by reference plans, specifications,

general conditions and addenda from the general contract executed by and between Eastern and Lynnfield.

15. General Conditions for the Lynnfield Project are also based upon the AIA A-201 documents, as modified, and similar to the projects for Fall River and New Bedford, the Lynnfield Project included specific provisions relating to Changes in the Work (Article 7); Default and Termination (Article 14.2); and Non-waiver provisions (Article 13.4 .2). (See Eastern Exhibit A, Motwane Affidavit exhibit 2A.)

16. Hartford issued performance and payment bonds for the Lynnfield Project dated August 26, 2001, utilizing the same form, the so-called A-311 form, and also incorporating by reference the subcontract, and by extension the terms and conditions of the general contract for the Lynnfield Project. (See Exhibit B attached to the Judd Affidavit in Hartford's motion for summary judgment.)

17. In July of 2002, Hartford created documents which confirmed an increase in the penal sum bond limit for that project from \$1,173,000.00 to \$1,762,161.00 based upon increases in the subcontract values because of change orders at the Spencer Borden project. (See Eastern Exhibit F, Deposition of Williams Jarvis and exhibits 4 and 5 attached thereto.)

18. Hartford issued notices to the agent who procured such bonds that the premium to be charged for such would be increased from \$15,230.00 to \$21,122.00 on account of such increases and received payment for such

-5-

increases from the agent. (See Eastern Exhibit C, Affidavit of Donald
Goodrich, and exhibit D attached thereto.)

19.    On or about July 31, 2002, Hartford also created documents which
       confirmed an increase in the penal sum bond limit for the Lynnfield
       Project from $1,487,000.00 to $1,606,255.00. (See Eastern Exhibit F and
       Exhibits 17 and 18 attached thereto.)

20.    Hartford likewise issued notices to the agent who procured such bonds
       that the premium to be charged would be increased from $18,370.00 to
       $19,563.00 on account of such increase and received payment for such
       increases from the agent. (See Eastern Exhibit C,  Affidavit of Donald
       Goodrich and exhibit E attached thereto.)

21.    On or about July 30, 2002, Hartford created in its records confirmation of
       an increase in the penal sum and bond penalty for the Normandin Project
       from    $1,450,000.00  to  $1,752,156.00.    (See Eastern Exhibit D,
       Deposition of Morelewicz with deposition Exhibits 6 and 7.)

22.    Hartford likewise issued notices to the agent who procured such bonds
       that the premium to be charged would be increased on account of such
       increase.  (See Eastern Exhibit C, Affidavit of Donald Goodrich and
       Exhibit H attached thereto.)

23.    On September 16, 2002, Eastern submitted a notice to Yves Cantin,
       Hartford Fire Insurance Company, regarding problems encountered on all
       projects on which Eastern has engaged S & R Construction as a
       subcontractor, including claims from suppliers and nonperformance based

- 6 -

upon subcontractor's financial difficulty.   (See Eastern Exhibit B, Deposition of Gary Judd with Exhibit 13 attached thereto.) Internal records from Hartford's underwriting department in the form of an e-mail correspondence dated October 11, 2001 confirm a practice by S & R of overbilling project owners on construction projects. (See Eastern Exhibit F and Exhibit 10 attached thereto.)

24.  On September 24, 2002, a second notice on behalf of Eastern was sent by Attorney Edward Quinlan to S & R and Kevin Gillen at Hartford Fire Insurance Company regarding defaults of S & R and breach of subcontracts, labor disruptions arising from failure to make payment for union benefits and checks issued by S & R not honored.  Notice was also given regarding failure to furnish insurance, general liability and workers compensation. Eastern made demand that Hartford cure, provide supervision and management, and requests meeting to review such issues. The occurrences which Eastern declares to be breaches of the subcontract obligation are within the scope of conduct deemed to be a default of the Contract and Subcontract obligations set forth in Article 14.2, which have been incorporated by reference into the contract and the bonds. (See Eastern Exhibit B with Exhibit 2 attached thereto.)

25.  The notice of September 24, 2002 specifically recites a number of events constituting a default and specifically states:

"All of the foregoing constitute events of default under the subcontract obligations existing between S & R and Eastern. Eastern makes demand of S & R and Hartford Insurance Company, as surety on bonds issued for

the project, to cure these defaults, furnish Eastern with an up-to-date and accurate summary of vendors, vendor payment records and other financial matters relating to the performance on all subcontracts between S & R and Eastern, to provide proper supervision, manpower and management of these projects and remedy failures to adhere to project schedules and otherwise fulfill the obligations under the subcontracts."

(See Eastern Exhibit B with Exhibit 2 attached thereto.)

26.    On September 30, 2002, a meeting was held at Eastern's office at which representatives of Hartford's Bond Claim Department, Attorney Kevin Gillen, Donald Goodrich, S&R's bonding agent, S & R and counsel are present. Among the items discussed at this meeting, the Lynnfield Project and New Bedford Project with focus on the need to complete work in a timely fashion predominate. Substantial issue regarding Septic Tanks at Lynnfield, necessity of work relating to paving, curbing at New Bedford. Proposal to cancel and rescind subcontract for Lincoln/Sudbury Project. Also discussed were topics of reducing work backlog and allowing concentration on bonded projects. Copies of minutes of meeting distributed to all participants, including Hartford. S & R agrees to provide additional manpower and equipment at projects, and to keep all parties, including Hartford, informed by a written progress reports as to continuing work. (See Eastern Exhibit G attached hereto).

27.    Contemporaneous with notifications from Eastern, Hartford was also advised of claims on another site work project undertaken by S & R and Bowdoin Construction for a project known as the Lowes project in Rhode Island. (See Eastern Exhibit F, Jarvis deposition testimony and Exhibits 8 and 9 attached thereto.)

- 8 -

28. On October 1, 2002, Eastern was served with a preliminary injunction enjoining further payments from a supplier identified as Caruso Landscaping. Hartford and S & R counsel served with demand to defend.

29. On October 16, 2002, S & R was placed on an Observation List maintained by Hartford Insurance. Hartford begins the process of locating and filing its general agreement of indemnity as a security instrument. (See Eastern Exhibit B, Jarvis deposition testimony and Exhibit 7 attached thereto.) The purpose of such activity, among other things, would be to secure and protect Hartford's financial interests. (See Eastern Exhibit B, deposition testimony and Exhibits attached thereto, page 32, lines 6-24; page 33, lines 1-24; page 34, lines 1-24; page 35, lines 1-19.)

30. In December of 2002, Hartford is made aware that defaults by S & R continue, by its nonpayment for materials, services, and fuel used on bonded projects involving Eastern. (See Eastern Exhibit B, deposition testimony and Exhibits 4, 5, and 6 attached thereto.) This claim notification from Orlando Enterprises advises of nonpayment for fuel at the Lynnfield, Normandin, and Medway Projects as well as the Lakeville and William Greene Elementary School Projects and that additional claims are forthcoming on other projects once the bond number is received.

31. The January 9, 2003 Agreement (see Eastern Exhibit A, Affidavit of Ramesh Motwane and exhibit 3 attached thereto) was negotiated to eliminate the obligation of S&R and Hartford to finish incomplete work at

the Lynnfield and Normandin Projects but S&R and Surety remain responsible for previously performed work including any work found to be defective, consistent with the warranty obligations of the general conditions incorporated into the contract. On February 4, 2003, Hartford's representatives met with David and Rocco Izzo of S & R Construction, and among other things Hartford is informed of the January 9, 2003 agreement for completion of the two (2) projects (Lynnfield & Normandin) and receive summary status of projects in request for financial assistance to continue operations. (See Eastern Exhibit B and Exhibit 3 attached thereto.)

32.    On February 6, 2003, Eastern, through counsel, sends notice to all parties including Hartford of additional claims being received from subcontractors and suppliers on all projects, and urgently requests a meeting with regard to the status of all projects, the proposed response by Hartford to the claims from Eastern, as well as those from suppliers, subcontractors and others on the various projects. (See Eastern Exhibit B and Exhibit 7 attached thereto.)

33.    On February 7, 2003, Hartford, through Allen Pavlic, confirms that it is aware Eastern has taken over work at the Normandin and Lynnfield Projects, sends a letter by facsimile acknowledging receipt of the February 6, 2003 letter, suggests that a meeting may be premature, acknowledges that and makes demand for any funds on the bonded projects and further demands that Eastern not release any funds or payments to S & R

without consent and approval of Hartford. (See Eastern Exhibit F and

Exhibit 39 attached thereto.)

34.    On March 4, 2004, Eastern through Counsel reaffirms its previously

issued notices of default of S & R Construction and issues a notice of

termination for all subcontracts and repeats its previous demand under the

bonds for all projects. In part such notice states as follows:

"As indicated in previous correspondence dated September 24, 2002 and
subsequent correspondence directed to both S & R Construction and
Hartford Insurance Company, S & R Construction has been in default of
its contract obligations on its subcontract with Eastern Contractors, Inc.

Despite repeated requests for performance in accordance with the
subcontract, plans and specifications, orders of condition and other
directives received from Eastern, S & R Construction Company, Inc. has
persistently or repeatedly refused or failed to furnish and supply properly
skilled workmen or materials for the projects; has failed to make prompt
payment to its subcontractors or suppliers; has persistently disregarded
regulations and orders of public authorities governing performance of
work on the subcontract; and has persistently disregarded and violated
orders and directives of the general contractor, the architect and has
committed substantial violations of the conditions of the contract."

(See Exhibit D attached to the Judd Affidavit in Hartford's motion for
summary judgment.)

35.    Williams Jarvis is engaged to act as consultant on behalf of Hartford in

late March 2003 and schedules meetings with S&R's principals who assert

that their cooperation is dependent upon a waiver of indemnity and award

of contracts for completion of work on a time and materials basis

particularly for the Wetherbee and Spencer Borden Projects through a new

entity, R.O.C. Construction Company, Inc. (See Eastern Exhibit F and

exhibit 2 attached thereto.)

36.    Richard Divine, Vice President of Engineering Services, was employed by
       Hartford and its engineering division assigned to conduct investigation
       and analysis of S & R projects. Mr. Divine sends e-mail correspondence
       to Williams Jarvis on April 1, 2003 setting forth a proposed course of
       action regarding different S & R projects including Lynnfield and
       Normandin. Divine states:

       "Lynnfield and Normandin - Allow Eastern to complete per the 1/9/03
       agreement (although Alan was inclined to investigate that agreement and
       its terms to see if we could acquire rights to any contract surplus).
       (See Eastern Exhibit F, Jarvis deposition testimony and exhibits 31
       attached thereto.)

37.    Hartford, through Mr. Divine, sends correspondence to Tony Branca, a
       consultant engaged to secure proposals for completion of work on the
       Eastern Contractors' Projects, on April 7, 2003 in which he refers to eight
       (8) bonded projects with Eastern and states as follows:

       "Of those, Lynnfield and Normandin may be under a 1/9/03 agreement
       between S & R and Eastern for Eastern to finish for the contract balance
       and some other conditions. Even so, we may retain responsibility for the
       cost of correcting latent defects that Eastern now says it has found, but has
       provided no details."      (See Eastern Exhibit F and exhibit 38 attached
       thereto.)

38.    Williams Jarvis, Hartford's representative in connection with the S & R
       claims, acknowledges the January 9, 2003 agreement with S & R in
       correspondence in April, 2003. (See Eastern Exhibit F and Exhibit 33,
       April 23, 2003 Fax Memo from William Jarvis to Dustin L. White
       attached thereto as Exhibit 33 wherein Mr. Jarvis states:

- 12 -

> "With regard to the Lynnfield Project, the bond Obligee, Eastern Contractors, Inc. (ECI), has agreed to pay the amount of $5,368.11 in discharge of the same claim per a separate agreement between Eastern Contractors, Inc. and our Principal.     It is our understanding, however, that ECI's payment of this claim has been withheld due to an attachment order obtained by another claimant. Consequently, we will promptly request permission from ECI to pay your claim and offset that payment against any funds owed to ECI under our bonds. We expect to receive ECI's approval of our request, but the payment of this residual claim will be delayed pending their approval."

See also e-mail from Williams Jarvis to Ramesh Motwane dated April 23,

2003 attached thereto as Exhibit 35 wherein Mr. Jarvis states:

> "I have attached a self-explanatory memo to Agritech Corp., one of the suppliers/subcontractors to S&R on the Lynnfield project that was scheduled to be paid by ECI per your release agreement with S&R for both the Lynnfield and Normandin projects. Please return your OK for our payment of this claim, as well as the other claims on the Lynnfield and Normandin for which ECI has withheld payment, with credit or offset to the amount owed to ECI under the corresponding performance bonds.")

Eastern in an e-mail response gave its consent to such payment. (See

Eastern Exhibit F, Jarvis deposition testimony and exhibit 35 attached

thereto.)

39.     Final agreement regarding takeover of the Fall River Project is made as of

May 16, 2003. (See Exhibit J of the Judd Affidavit.) The Takeover

Agreement incorporates by reference original Subcontract Documents, and

provides that payment of monies to Hartford shall be in accordance with

the terms of the Subcontract and include requirements of approval by the

Owner. Hartford later engages R.O.C. Construction Company, Inc., a new

company made up of the former principals of S&R Construction, to

perform work at Fall River without informing Eastern. (See Eastern

- 13 -

Exhibit B, deposition testimony and exhibits of Gary Judd, page 132, lines 11 through 24.)

40.    Exhibit K of the Judd Affidavit  is merely a listing of payments, based upon copies of checks without any personal knowledge of the work performed, that the payments allegedly represent.  Gary Judd did not review business records to support such recitation and has no personal knowledge of the amount claimed by Hartford to have been expended at the Fall River Project. (See Eastern Exhibit B, Judd deposition, page 100, lines 1 through 24 and page 101, lines 1-20.)

41.    Eastern Exhibit F, Affidavit of Magdalena Loret (attached hereto) contains copies of payroll reports required by law which R.O.C. Construction Company, Inc. was required to file with the City of Fall River in relation to the work performed under the Takeover Agreement between Hartford and Eastern. The Certified Payroll Records established that R.O.C. Construction Company, Inc. filed reports for work performed at the Fall River Site for less than twenty (20) days during the period May through September, 2003.

42.    Hartford has not established by credible evidence the basis for its claims of amounts expended for work performed by R.O.C. Construction Company, Inc. at the Fall River Project, and there are genuine issues of material fact and questions of law whether Hartford expended funds in excess of the penal limits of bonds issued for those projects.

Respectfully submitted,
Eastern Contractors, Inc.
By its attorneys,

Edward J. Quinlan, Esq., BBO# 409060
David T. Keenan, Esq., BBO# 567325
Quinlan & Sadowski, P.C.
11 Vanderbilt Avenue, Suite 250
Norwood, MA 02062-5056
Phone: 781-440-9909
Dated: December 22, 2005          Fax:    781-440-9979

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the foregoing
document was served on the attorney of record for
each other party in this action, by mail, postage
prepaid, on 12-22-05.

- 15 -