UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>EASTERN CONTRACTORS, INC.,<br><br>    Defendant. | CIVIL ACTION NO. 03-12502-NMG |
| EASTERN CONTRACTORS, INC.,<br><br>    Third Party Plaintiff,<br><br>v.<br><br>CITY OF LAWRENCE, CITY OF FALL RIVER and FREETOWN/LAKEVILLE REGIONAL SCHOOL DISTRICT,<br><br>    Third Party Defendants. | |

**REPLY MEMORANDUM OF HARTFORD FIRE INSURANCE COMPANY TO EASTERN CONTRACTORS, INC.'S OPPOSITION TO HARTFORD'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

The plaintiff, Hartford Fire Insurance Company ("Hartford"), hereby submits this Reply Memorandum in response to Eastern Contractors, Inc.'s ("Eastern") Opposition to Hartford's Motion for Partial Summary Judgment.

    A.    **An Increase In The Contract Amount Does Not Increase The Amount Of The Penal Sum Of The Bond.**

Eastern incorrectly argues that the penal sum of the Spencer Bond was increased to reflect increases in the contract amount by change orders in the contract documents. This

1

argument has been rejected by one court that dealt with this issue. In <u>In re Technology for Energy Corp.</u>, 140 B.R. 214 (E.D. Tenn. 1992), the United States Bankruptcy Court for the Eastern District of Tennessee rejected the same argument asserted by Eastern regarding an alleged increase in the penal sum based on an increase in the contract amount, holding that the surety's liability is limited to the penal sum of the bond despite change orders increasing the dollar amount of the bonded contract beyond the penal sum of the bond.

In <u>Technology for Energy</u>, Bechtel Engineering Co. and Public Service Electric & Gas Co. pursued Technology and its performance bond surety, American Insurance Co. ("American"), for performance bond default damages under two purchase orders and two bonds, which the court referred to as one. <u>Id</u>. at 215. The original contract price was $3.9 million, later increased by changes to $6.95 million. <u>Id</u>. The bond language waived notice of change in the bonded contract and stated that changes would not discharge the surety from liability under the bond. <u>Id</u>.

Bechtel sued American, arguing that there should be an increase in American's penal limit to reflect the amount of the adjusted contract price. <u>Id</u>. Bechtel contended that there was a "broad trade custom" that the penal sum of a bond automatically increases together with any increase in the underlying contract price. The court thoroughly examined Bechtel's claims from the perspective of the broad trade custom evidence, and found no historical basis for the existence of a broad trade custom to increase a bond penalty automatically when there is an increase in the contract price. <u>Id</u>. at 227-28. The Court rejected Bechtel's insistence that such a custom was the result of the practice of sureties no longer responding to requests for consent to changes in bonded contracts or that the "customary practice" was that sureties in fact operated in

2

such a fashion that it could be said that they essentially agreed to consent in advance of changes to the contract amount. Id. The Court rejected Bechtel's argument and held that consent to a contract change is not tantamount to consent to a penal sum change without a connecting "link" between consent and increase. Id. The court concluded that the "broad trade custom" alleged by Bechtel -- that the penal sum of a bond automatically increases together with any increase in the underlying contract price -- was not a custom of the trade at all, but was nothing more than a "common misunderstanding of law by people regularly involved with contractor's bonds." Id. at 231; see e.g., Affidavit of Donald Goodrich, ¶8 (demonstrating the same misunderstanding of the law).

**B.     The Statute of Frauds Defeats Eastern's Claim That The Penal Sum Was Increased Because There Is No Signed Writing By Hartford.**

Irrespective of whether a trade custom exists, the statute of frauds provides an independent basis to reject Eastern's claim that the penal sum of the Spencer Bond was increased because there is no signed writing by Hartford increasing the penal sum of the bond.

The Massachusetts Statute of Frauds provides, in relevant part:

> No action shall be brought: . . . [t]o charge a person upon a special promise to answer for the debt, default or misdoings of another; . . . [u]nless the promise, contract or agreement upon which such action is brought, or some memorandum or note thereof, is in writing *and signed by the party to be charged* therewith or by some person thereunto by him lawfully authorized.

G.L. c. 259, §1 (emphasis added). This provision of the statute of frauds applies to contracts of suretyship. See Dexter v. Blanchard, 93 Mass. 365 (1865). Eastern has come forth with no evidence of a writing, *signed by an authorized representative of the Hartford*, that increases the penal sum of the Spencer Bond.

3

The issue was also addressed in Technology for Energy. There, the Court observed that the statute of frauds defeated Bechtel's arguments because the statute applied to a surety's promise to answer for the debts or defaults of another and could not be enforced without a signed writing. Technology for Energy, 140 B.R. at 228-29. The Court held that, irrespective of any "custom," the statute of frauds requires that an increase in penal sum be evidenced by a writing signed by the surety. Id. at 228 ("the statute of frauds requires an increase in the penal sum to be evidenced by a writing *signed by the surety*") (emphasis added). Eastern has not provided the Court with any such evidence.[1]

### C. The Affidavit of Donald Goodrich Must Be Disregarded By The Court Because It Offers An Expert Opinion, Not In Admissible Form And, For The Independent Reason That The Affidavit Impermissibly Provides An Opinion Regarding The Content Or Application Of The Law.

#### 1. The Affidavit of Donald Goodrich Must Be Disregarded Because It is Not In Admissible Form.

"On a summary judgment motion, the district court properly considers only evidence that would be admissible at trial." Nora Beverages, Inc. v. Perrier Group of America, Inc., 164 F.3d 736 (2d Cir. 1998), citing Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997); DeFelice v. Ingrassia, 210 F. Supp. 2d 88, 92 (D. Conn. 2002) (same). Expert material offered in opposition to a summary judgment motion must also be in admissible form. Duplantis v. Shell Offshore, Inc., 948 F.2d 187, 191 (5th Cir. 1991) (to properly use expert testimony to defeat summary judgment motion, non-movant must proffer expert assessment in admissible form through affidavit, deposition or trial transcript); see also Fed. R. Civ. P. 56.

---

[1] Similarly, Eastern has provided no evidence that it, as the obligee on the Spencer Bond, ever requested that the penal sum be increased from the original amount. Likewise, Mr. Goodrich does not suggest in his affidavit that Eastern requested an increase in the penal sum.

4

Eastern has offered the Affidavit of Donald Goodrich, wherein he concludes that "if the contract value was increased due to change orders, the penal sum would be increased by the amount of the change order, and an additional premium would become due Hartford Fire Insurance Company." See Affidavit of Donald Goodrich, ¶8. The (legal) opinion that the penal sums were increased lacks any foundation whatsoever and is impermissibly conclusory. Moreover, nothing in Mr. Goodrich's affidavit illuminates his conclusion's underpinnings. See Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668, 681 (1st Cir. 1994) ("A district court may exclude expert testimony where it finds that the testimony has no foundation or rests on . . . speculative evidence"); Hayes v. Douglas Dynamics, Inc., 8 F.3d 88, 92 (1st Cir. 1993) ("Where an expert presents nothing but conclusions--no facts, no hint of an inferential process, no discussion of hypotheses considered and rejected, such testimony will be insufficient to defeat a motion for summary judgment"); see also Vincent v. Town of Scarborough, 2003 WL 22757940 (D. Me. 2003).

    **2.** **The Affidavit of Donald Goodrich Must Also Be Disregarded Because, By Offering Testimony About The Content Or Application Of The Law, He Impermissibly Invades The Province Of The Court.**

Mr. Goodrich's affidavit – in particular paragraph 8 – should also be disregarded and stricken because he offers testimony – whether expert or otherwise – about the content or application of the law as it concerns the effect of an increase in the contract amount on the penal sum of a bond. Indeed, it is well settled that an expert may not invade the court's province by testifying on issues of law or stating ultimate legal conclusions. Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 100 (1st Cir. 1997) (excluding expert legal opinion "because the judge's expert knowledge of the law makes any such assistance at best cumulative, and at worst

prejudicial"); United States v. Scop, 846 F.2d 135, 140 (2d Cir. 1988) (holding that expert's statements that defendants violated securities law and "drew directly upon the language of the statute" were legal conclusions that "went well beyond his province as an expert"); Colon v. BIC USA, Inc., 199 F. Supp. 2d 53, 96 (D.N.Y. 2001) ("it is well-settled that experts are prohibited from testifying as to the content or application of the law").

The rule prohibiting experts from providing their legal opinions or conclusions is "so well-established that it is often deemed a basic premise or assumption of evidence law -- a kind of axiomatic principle." THOMAS BAKER, THE IMPROPRIETY OF EXPERT WITNESS TESTIMONY ON THE LAW, 40 U. Kan. L. Rev. 325, 352 (1992). Other circuits are in accord. See; Snap-Drape, Inc. v. Comm'r of Internal Revenue, 98 F.3d 194, 198 (5th Cir. 1996) ("We have repeatedly held that this rule does not allow an expert to render conclusions of law"); Berry v. City of Detroit, 25 F.3d 1342, 1353 (6th Cir. 1994) ("We also believe this testimony was received in violation of the Federal Rules of Evidence . . . . It is the responsibility of the court, not testifying witnesses, to define legal terms. The expert's testimony in this regard invaded the province of the court"); United States v. Leo, 941 F.2d 181, 196 (3rd Cir. 1991) (stating that "it is not permissible for a witness to testify as to the governing law"); United States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir. 1991); see also Andrews v. Metro North Commuter R.R. Co., 882 F.2d 705, 708 (2d Cir. 1989) (holding that engineer's testimony that defendant was negligent was an improper legal conclusion).

Aside from being wrong, Mr. Goodrich's statement that the penal sum would be increased if a contract value was increased due to change orders is a legal opinion and a legal

conclusion. Because it is not permissible for witnesses to testify as to the governing law, Mr. Goodrich's affidavit must be stricken and disregarded by the Court.

    **D.**    **Hartford Has Established That The Penal Sum Was Expended In Completing The Spencer Borden Project.**

The Spencer Bond and the Takeover Agreement on their faces set the maximum liability of Hartford at the penal sum of the bond. See Judd. Aff., Exhibit I ("*in no event* shall the aggregate liability of the Surety exceed the amount of this bond"), and Exhibit J ("Eastern agrees that the total liability of the Hartford under this Agreement and under the Performance Bond . . . *shall be limited to and shall not exceed* the bond penalty of the Performance Bond") (emphasis added). Based on this language (i.e. "in no event" and "shall be limited to and shall not exceed"), and the long accepted principles of surety law, Hartford's liability is capped at the amount of the stated penal sum, even if it chose to complete the project. See People ex rel. Ryan v. Environmental Waste Resources, Inc., 335 Ill. App. 3d 751 (2002) (holding that the surety's liability, even where surety chose to complete, is limited to the amount of the penal sum of the bond); Peerless Ins. Co. v. South Boston Storage & Warehouse, Inc., 397 Mass. 325 (1986).

    **E.**    **Eastern Failed To Properly Declare S&R In Default On The Lynnfield and Normandin Projects Until March 4, 2003, And By That Time, Eastern Had Undertaken To Perform S&R's Work, Thereby Dissipating Hartford's Security In The Contract Balances.**

Eastern failed to properly declare S&R in default on the Lynnfield and Normandin Projects until March 4, 2003 and, by that time, Eastern had already undertaken to complete S&R's work, thereby depriving Hartford of its completion options under the bonds and dissipating Hartford's security in the contract balances. Eastern's attempt to distinguish Elm Haven Constr. Ltd. Partnership v. Neri Constr., LLC, 376 F.3d 96, 100 (2nd Cir. 2004) should be

7

rejected. Eastern's claim that the September 24, 2002 letter provided sufficient notice of a declaration of default to trigger Hartford's obligations under the bonds belies the undisputed facts. It is undisputed that, in response to the September 24, 2002 letter, on or about September 30, 2002, representatives of Hartford, S&R and Eastern met to discuss the Lynnfield and Normandin Projects. See Hartford's Statement, ¶10. It is also undisputed that, at the conclusion of the meeting, S&R agreed to provide additional manpower and equipment at the Lynnfield and Normandin Projects and to keep all parties, including Hartford, informed as to the progress of the work by written report. Id. at ¶11.

Similar to the findings by the Court in Elm Haven, the acquiescence by Eastern to keep S&R on the Lynnfield and Normandin Projects did not evidence a desire to end the relationship with S&R as required for a formal default under the performance bonds. See Elm Haven, 376 F.3d at 101. Subsequently, Eastern failed to provide notice to Hartford that S&R had been actually declared in default, terminated and foreclosed from performing any work under the subcontracts prior to the March 4, 2003 termination letter. By that time, however, Eastern had ignored the provisions of the bonds and had undertaken to complete the Normandin and Lynnfield Subcontracts itself, thereby dissipating Hartford's security in the subcontract balances. By taking such action, Eastern deprived Hartford of the opportunity to protect itself and mitigate against loss by participating in the selection of a successor contractor to ensure that the lowest bidder was hired to complete the subcontract work. See Elm Haven Ltd. Partnership v. Neri Constr., LLC, 281 F. Supp. 2d 406, 414 (D. Conn. 2003) (surety discharged where obligee had already contracted with a completion contractor without the involvement of the surety, which precluded the surety from exercising its options under performance bonds). Similar to the result

reached by the Court in Elm Haven, the March 4, 2003 letter sent subsequently by Eastern in an attempt to remedy its failure to default S&R was ineffective and did not constitute the notice required under the bonds because it came too late to give Hartford the option of curing S&R's default.

Citing Bayer & Mingolla Construction Co. v. Deschenes, 348 Mass. 594 (1965), Eastern attempts to seek refuge in the contention that a compensated surety is only discharged by a change or modification to the underlying agreement to the extent the surety is harmed by the change. This argument, however, was addressed and rejected by the First Circuit in Seaboard Sur. Co. v. Town of Greenfield, 370 F.3d 215, 220 (1st Cir. 2004), wherein the Court noted that, "[w]hile it is true that 'Massachusetts courts have held that lack of prompt notice to the compensated surety of a contractor's default (as required by a Performance Bond) does not discharge the surety if it is not harmed,' notice requirements 'exist . . . precisely to provide the surety an opportunity to protect itself against loss by participating in the selection of the successor contractor to ensure that the lowest bidder is hired and damages mitigated.'" Id.; quoting Enterprise Capital, Inc. v. San-Gra Corp., 284 F. Supp. 2d 166, 177 (D. Mass. 2003) (citations omitted). As the court concluded in Enterprise Capital, "even if [the surety] must show injury, loss, or prejudice, it meets this hurdle, given its deprivation of mitigation opportunities." Enterprise Capital, 284 F. Supp. at 177.

Eastern's failure to declare a default and provide Hartford an opportunity to exercise its completion options constituted a material breach of the Normandin and Lynnfield Bonds, and absolved Hartford of any and all liability to Eastern. Accordingly, Hartford is entitled to summary judgment on Count VII of its Complaint for Declaratory Relief and an Order declaring

9

that Hartford is discharged from all obligations and liability under surety bonds issued with respect to the Lynnfield and Normandin Projects.

## II.     CONCLUSION

For the forgoing reasons, Hartford respectfully requests that the Court enter summary judgment in Hartford's favor on Count VII of its Complaint for Declaratory Relief and an Order declaring that Hartford is discharged from all obligations and liability under surety bonds issued with respect to the Lynnfield and Normandin Projects, and on Counts I and II of Eastern's Counterclaim as they pertain to the Spencer Project.

Respectfully submitted,

Hartford Fire Insurance Company,

By its attorneys,

/s/ Eric H. Loeffler
Bradford R. Carver, BBO #565396
Eric H. Loeffler, BBO #641289
Hinshaw & Culbertson LLP
One International Place, Third Floor
Boston, MA 02110
(617) 213-7000

34017275v1 856875