**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| HARTFORD FIRE INSURANCE CO. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.  03-12502 NMG |
| | ) | |
| EASTERN CONTRACTORS, INC. | ) | |
| | ) | |
| Defendant / Third Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF LAWRENCE, CITY OF FALL | ) | |
| RIVER, and FREETOWN/LAKEVILLE | ) | |
| REGIONAL SCHOOL DISTRICT, | ) | |
| | ) | |
| Third Party Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF CITY OF LAWRENCE'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Third Party Defendant City of Lawrence ("Lawrence" or the "City") hereby submits this memorandum of law in support of its Motion for Partial Summary Judgment on Counts I and II asserted by Defendant / Third Party Plaintiff, Eastern Contractors, Inc. ("Eastern") in its Third Party Complaint.  As set forth below, the City is entitled to judgment as a matter of law, because (i) there was not a differing site condition that would entitle Eastern to an equitable adjustment, but even if there was, (ii) Eastern failed to provide Lawrence with the requisite contractual and statutory written notice of its claim for an equitable adjustment resulting from a differing site condition and (iii) Eastern failed to provide Lawrence with supporting documentation to validate its claim for an equitable adjustment resulting from a differing site condition.  Further, even if Eastern was found to have submitted its claim in a timely manner and with adequate supporting

#595126

1

documentation, (iv) Eastern never provided timely written notice of any change or addition to its previously-made claim for an equitable adjustment resulting from a differing site condition.

Because there are no issues of material fact to dispute the City's contentions in this matter, the City is entitled to summary judgment as a matter of law as to Counts I and II of Eastern's Third Party Complaint.

## **FACTUAL BACKGROUND**

This case involves a dispute related to the construction of the new Wetherbee Elementary/Middle School in Lawrence, Massachusetts (the "Project"), a public construction project.

On June 27, 2001, the City contracted with Eastern as its General Contractor. <u>See</u> Affidavit of David E. Capaldo ("Capaldo Aff."). On July 30, 2001 Eastern in turn subcontracted with S&R Construction Company, Inc. ("S&R") to perform certain site work at the Project for the amount of $1,050,000.00. <u>See</u> Exhibit B to Capaldo Aff. The Design Partnership of Cambridge ("Design Partnership") was the City's Architect on the Project, and was the City's authorized representative for all correspondence directed to the Owner. <u>See</u> Capaldo Aff.

The Contract Documents enumerated in the Prime Contract between Lawrence and Eastern (the "Contract") included certain General Conditions and technical information that were incorporated by reference into the Subcontract between Eastern and S&R (the "Subcontract"). Notably, the Claims provisions in Article 4 of the General Conditions, and the Rock Excavation Unit Price provisions in Specification Division 02200 were incorporated by reference into the Subcontract. <u>See</u> Capaldo Aff. These provisions include the following:

Article 4.3.1 of the General Conditions states that "[a] Claim is a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms,

2

payment of money, extension of time or other relief with respect to the terms of the Contract. The term 'Claim' also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. Claims must be made by written notice. The responsibility to substantiate Claims shall rest with the party making the Claim."

Article 4.3.3 of the General Conditions states that [c]laims by either party must be made within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later. Claims must be made by written notice. Any change or addition to a previously made Claim shall be made by timely written notice in accordance with this subparagraph 4.3.3."

Article 4.3.6 of the General Conditions (Claims for Concealed or Unknown Conditions) includes the provision required by M.G.L. c. 39, § 39N:

> "If, during the progress of the work, the contractor or the awarding authority discovers that the actual subsurface or latent physical conditions encountered at the site differ substantially or materially from those shown on the plans or indicated in the contract documents either the contractor or the contracting authority may request an equitable adjustment in the contract price of the contract applying to work affected by the differing site conditions. A request for such an adjustment shall be in writing and shall be delivered by the party making such claim to the other party as soon as possible after such conditions are discovered. Upon receipt of such a claim from a contractor, or upon its own initiative, the contracting authority shall make an investigation of such physical conditions, and, if they differ substantially or materially from those shown on the plans or indicated in the contract documents or from those ordinarily encountered and generally recognized as inherent in work of the character provided for in the plans and contract documents and are of such a nature as to cause an increase or decrease in the cost of performance of the work or a change in the construction methods required for the performance of the work which results in an increase or decrease in the cost of the work, the contracting authority shall make an equitable adjustment in the contract price and the contract shall be modified in writing accordingly."

Article 4.3.6 of the General Conditions also requires that "[u]nless otherwise required by law any requests for equitable adjustments made by the Contractor, and all supporting documentation, must be submitted within 21 days of discovery as a precondition to eligibility for equitable adjustment."

Division 02200-1.10 of the specifications includes the following relevant provisions:

"A.    <u>Base bid volumes</u>: The following stated quantities should be included in the Contractor's base bid. Material quantities encountered that are greater than or less than these base bid volumes shall be subject to the provisions included herein. …

    2.    <u>Rock Excavation</u>:

        The Contractor shall carry in his base bid for the cost for removing 3000 cubic yards of General Rock Excavation…

        a.    If the total amount of Rock Excavation exceeds the quantity of Rock Excavation included in the Contract as part of the base bid, the Owner shall pay for the excess excavation at the unit price specified herein. …

B.    Should unanticipated conditions arise that result in an increase … of certain classes of work from those required by the Contract Documents, the unit prices below shall be used, at the option of the Owner. The Unit Prices shall represent the exact net amount per unit to be paid to the Contractor. … No additional adjustment will be allowed for overhead, profit, insurance, or other direct or indirect expenses of the contractor or subcontractor. No amount, other than that specified herein, will be paid by the Owner for excavation herein defined.

C.    Unit Prices shall be applied to approved excavation of material that has been measured in place as specified herein. …

    2.    General rock excavation including all costs relating to such rock excavation, including blasting, dewatering, removal of the excavated material from the site and disposal, per cubic yard. … $38.50."

Eastern, and its site subcontractor, S&R, commenced their work at the Project in August of 2001. <u>See</u> Capaldo Aff.

#595126

4

**EASTERN'S WRITTEN CORRESPONDENCE WITH LAWRENCE**

On November 1, 2001, Eastern submitted "COP #11 General Rock Excavation" to Design Partnership, with the note, "[e]nclosed please find COP#11 for General Rock Excavation in excess of the Contract Allowances.  Please be advised that under MLG [sic.] c30 s39N that the Contractor may request to negotiate a revised unit costs for this Contract Change."  Eastern included minimal back-up with its submittal, and calculated the Total Cost for COP #11 as $29,722.  See Exhibit C to Capaldo Aff.  The back-up included with Eastern's COP#56 consisted of two summary sheets, plus S&R "Job Invoice" tickets dated 8/23/01, 9/27/01, 10/12/01, and 10/16/01.  Id.  Pursuant to the requirements of the Contract and as a generally accepted practice, such back-up does not in any event constitute support for a differing site condition.

On November 1, 2001, Design Partnership's David E. Capaldo, AIA issued a letter to Eastern, writing therein in relevant part:

> "In response to your change order proposal #11 … We agree that you are entitled to additional compensation for the additional subsurface condition encountered.  However, with specific regard to the language included referencing MGL c30 s39N and your position that you are entitled to negotiate a revised unit cost for rock excavation.  [sic.] We respectfully disagree with your interpretation. … There is no language in 30:39N that mentions a contractors [sic.] right to renegotiate a previously agreed to unit cost. … The contract documents <u>do not</u> tell the bidder to carry the mentioned unit price for the quantity of material to be bid on.  The unit price is established for work above or below the given quantity. … [W]e cannot sign the Change Order Proposal as drafted.  The reservation of your right to renegotiate the unit price must be removed. …" (emphasis in original)

See Exhibit D to Capaldo Aff.

On March 13, 2002, Eastern submitted a revised "COP #11 General Rock Excavation" to Design Partnership, which included most of the same back-up as from its original submittal, and calculated the revised Total Cost for COP #11 as $28,259.00.  See Exhibit E to Capaldo Aff.

5

Design Partnership thereafter issued C.O. #2 to Eastern, including therein the amount of $28,259.00 for "C.O.P. #11."  See Capaldo Aff.

On or about July 10, 2002, Eastern submitted COP #56 (Excess Ledge Removal) to Design Partnership, again including a note that pursuant to M.G.L. c. 30, § 39N, Eastern may request to negotiate a revised unit cost for the work.  See Capaldo Aff.  On August 22, 2002 Design Partnership's David Capaldo again issued a letter to Eastern, writing therein in relevant part:

> "Please be advised that [C.O.P.] #56 (Excess ledge removal) was rejected due to the provision that [ECI] included in the proposal to re-negotiate the unit price. Otherwise this proposal was found acceptable and would have been approved if that caveat had not been included. … Based on the contract documents, ledge removal is included in the scope of work, including the provisions for additional ledge beyond the base contract pay limit.  Therefore [ECI] must proceed with the ledge removal as required by the contract documents.  Ledge removal beyond the base pay limit of the contract will be approved on future Change orders as it had been previously, at the unit price stipulated in the contract documents."

See Exhibit F to Capaldo Aff.  On or about August 23, 2002, Eastern submitted a revised COP #56 (General Rock Excavation) to Design Partnership, included most of the same back-up from its original submittal, and calculated the revised Total Cost for COP #56 as $97,466.60.  See Exhibit G to Capaldo Aff.  Design Partnership thereafter issued C.O. #7 to Eastern, including therein the amount of $97,466.60 for "COP #56."  See Capaldo Aff.

After August 23, 2002 and until December of 2003, neither Design Partnership nor the City received any written correspondence from Eastern regarding a claim for an equitable adjustment resulting from a differing site condition or relating to a claim for excess rock excavation.  Id.  Eastern continued, as applicable, to bill for actual General Rock Excavation performed, and received payment at the rate of $38.50 / cy for such excavation.  Id.

6

In December of 2003, Hartford Fire Insurance Company ("Hartford"), as surety to S&R, filed a lawsuit against Eastern, therein alleging, among other things, entitlement to receive from Eastern the proceeds of any claims arising out of additional work allegedly performed by S&R at the Project, exceeding, according to Hartford, $2,669,409.00.

In March 2004, Eastern filed a Third Party Complaint against Lawrence, alleging that S&R asserted that it encountered conditions during its performance of work at the Project that it claimed as extra work; that Eastern transmitted such claims to Lawrence for review, approval and payment; and that Lawrence failed and refused to review, approve and make payment of those claims.  Eastern contends in its Third Party Complaint that if Eastern is found liable to S&R for any such claimed extra work, Lawrence is liable to Eastern for the amount of recovery. In its Answer to the Third Party Complaint, Lawrence denied that it is liable to Eastern for S&R's claimed extra work.

Lawrence is not liable to Eastern for the costs associated with S&R's claimed extra work, because there was not a differing site condition for which Eastern would be entitled to an equitable adjustment; but even if there was, Eastern's failure to comply with the strict notice requirements of the Contract Documents and as required by law is fatal to Eastern's claim against Lawrence.

## DISCUSSION

**A.    Standard for Summary Judgment.**

Rule 56 (c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment should be granted where the record shows "that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Initially, the moving party must demonstrate the absence of a genuine issue of material fact; however, it is sufficient

#595126

for such purposes merely to point out the absence of evidence to support the non-movant party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986); Potterton v. Porter, 810 F.2d 333 (1st Cir. 1987). The non-moving party then has the burden of coming forward with evidence of "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 322.

In addressing a summary judgment motion, the court must focus on both the materiality and genuineness of any opposition. It is the substantive law's identification of which facts are critical and which facts are irrelevant that governs. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Moreover, the court must grant summary judgment where the non-movant's evidence is merely colorable, speculative or not significantly probative. Anderson, 477 U.S. at 249-50; Masdea v. Scholz, 742 F.Supp. 713, 715 (D. Mass. 1990).

To defeat a summary judgment motion, the non-moving must offer sufficient proof to support a jury verdict in his favor. Goenaga v. March of Dimes Defects Foundation, 51 F.3d 14, 18 (2d Cir. 1995). "Conclusory allegations will not suffice to create a genuine issue of fact." Delaware & Hudson Ry. V. Consolidated Rail Corp., 902 F.2d 174,178 (2d. Cir. 1990).

Here, even when viewing the facts in the light most favorable to Eastern, summary judgment in favor of the City is appropriate as a matter of law. All of the relevant facts are undisputed, and Eastern has produced no evidence to support any genuine defense to the fact that there was not a differing site condition entitling Eastern to an equitable adjustment, or that Eastern failed to timely provide notice to Lawrence in writing of its claims.

**B.    There was not a Differing Site Condition that would Entitle Eastern to an Equitable Adjustment**

Notwithstanding the formal notice and claims submission requirements that a contractor must follow in order to substantiate a claim for an equitable adjustment resulting from a differing

#595126

site condition, it is axiomatic that for a contractor to receive an equitable adjustment resulting from a differing site condition, there first must exist a differing site condition.  In this present case, there simply was not a differing site condition as contemplated by M.G.L. c. 30, § 39N.  In short and as applicable to this present case, M.G.L. c. 30, § 39N provides that if the contractor discovers during its work that the actual subsurface conditions encountered at the site differ substantially or materially from those shown on the plans or indicated in the contract documents, the contractor may request an equitable adjustment in the contract price resulting from the different conditions.  But if, as in this present case, the actual subsurface conditions do not differ substantially or materially from those shown in the Contract Documents, but rather only differ in quantity, and such differing quantities are contemplated by the Contract Documents, M.G.L. c. 30, § 39N simply does not apply and the contractor is not entitled to an equitable adjustment.

Prior to soliciting bids for the Project, Design Partnership and the City, plus their respective consultants, investigated the site to determine the quantity of General Rock Excavation that would be required to accommodate construction of the Project.  See Capaldo Aff.  Design Partnership estimated that 3,000 cy of General Rock Excavation would need to be performed.  Id.  Therefore, for bidding purposes, Design Partnership included in the Contract Documents that Contractors were to carry in their base-bids the cost for removing 3,000 cy of General Rock Excavation.  See Exhibit A to Capaldo Aff.  However, because Design Partnership recognized that the actual amount of General Rock Excavation would vary and could not be precisely determined, Design Partnership included specific provisions in the Contract Documents to address such circumstances.  See Capaldo Aff.  Notably, Design Partnership included the provision that if the actual amount of General Rock Excavation differed from the estimated amount of 3,000 cy of General Rock Excavated, the payment to the Contractor would be

9

adjusted positively or negatively in the exact amount of $38.50 / cy for General Rock Excavation.  Id.

When Eastern bid the Project, it was aware, based on the applicable provisions in the Contract Documents, that the actual quantity of General Rock Excavation would vary from the estimated 3,000 cy all contractors were required to carry in their bids.  The City, by way of Design Partnership's Contract Documents, made no guarantee that the actual General Rock Excavation would be exactly 3,000 cy, and thus Design Partnership in the Contract Documents included unit pricing for actual General Rock Excavation +/- 3,000 cy, which Eastern agreed-to by entering into the Contract.  See, e.g., D. Federico Company, Inc. v. Commonwealth, 11 Mass.App.Ct. 248, 415 N.E.2d 855 (1981). [1]  As such, because the Contract Documents made clear that the General Rock Excavation unit price would govern regardless of actual quantities +/- 3,000 cy, and that the 3,000 cy estimated amount was included for bidding purposes only, Eastern has no viable argument that the conditions it encountered at the Project differed substantially or materially from the information in the Contract Documents.  See D. Federico, 11 Mass.App.Ct. at 251, 415 N.E.2d at 857.  In other words, the City, in its Contract Documents, did not warrant the expected subsurface conditions, but rather explicitly indicated its ability to merely determine an estimated quantity by providing a distinct method for Eastern to recovery its actual costs on unit price basis.  See D. Federico, 11 Mass.App.Ct. at 251, 415 N.E.2d at 857.

Accordingly, there did not exist a differing site condition as contemplated by M.G.L. c. 30, § 39N entitling Eastern to an equitable adjustment.  The City, by way of its authorized

---

[1] Controlling Massachusetts state law is appropriate and applicable in this matter, as Article 13.1.1 of the General Conditions states that "[t]he Contract shall be governed by the law of the place where the Project is located."  Here, that is Massachusetts.

10

representative, Design Partnership, was correct in denying Eastern's request for an equitable adjustment pursuant to M.G.L. c. 30, § 39N.

**C.    Eastern Failed to Provide the City with the Requisite Contractual and Statutory Written Notice of its Claim for an Equitable Adjustment Resulting from a Differing Site Condition**

Eastern and its subcontractor, S&R, commenced their work at the Project in August 2001. See Capaldo Aff.  Sometime prior to, or at the latest on, August 23, 2001, S&R submitted a field Job Invoice (No. 103) to Eastern, which in turn Eastern presented to Lawrence's construction manager, Tishman Construction ("Tishman"), therein indicating 400 yards "Rock Excavation." See Exhibit C to Capaldo Aff.  Eastern submitted its "COP #11" to Design Partnership on November 1, 2001, and asserted in its cover-letter enclosing "COP #11" that it should be allowed to renegotiate a revised unit cost pursuant to M.G.L. c. 30, § 39N.  See Exhibit C to Capaldo Aff. Eastern's November 1, 2001 letter did not provide notice of a claim, but rather merely indicated Eastern's belief that it would be entitled to renegotiate certain unit-prices in the Contract. Further, Eastern issued its November 1, 2001 letter to Design Partnership more than twenty-one days after August 23, 2001, thus exceeding by far the strict requirement in the Contract that notice be provided within said 21 days.[2]  Finally, after November 1, 2001, Eastern submitted a revised "COP #11" to Design Partnership without the language to renegotiate the unit price, against which Design Partnership issued a change-order to Eastern that the City paid in accordance with the Contract Documents.  See Capaldo Aff.

Even after November 2001, S&R apparently continued to perform ledge excavation beyond the contractual 3,000 cubic yards, submitting Job Invoices for such work, which Tishman

---

[2] The City's position, as supported by law, is that Eastern's November 1, 2001 letter was not in sufficient detail, and did meet the contractual requirements necessary for the letter to serve as "notice" to the City.

#595126

continued to review and, if accurate, verified for quantity purposes.  <u>See</u> Capaldo Aff.  In July of 2002, Eastern apparently submitted another letter to Design Partnership, this time enclosing "COP #56," and requested a change-order in the amount of $97,466.60.  <u>Id.</u>  In that letter, Eastern again mentioned its desire to renegotiate the unit pricing pursuant to M.G.L. c. 30, § 39N.  Id.  Eastern's submission of "COP #56" did not provide notice of a claim, but rather merely served as Eastern's request for a change-order and Eastern's belief that it should be entitled to renegotiate certain unit-prices in the Contract.  Further, Eastern issued its July 10, 2002 "COP #56" to Design Partnership more than twenty-one days after May 13, 2002.  Finally, after August 22, 2002, Eastern submitted a revised and final "COP #56" to Design Partnership, without the language to renegotiate the unit price, against which Design Partnership issued a change-order to Eastern that the city paid in accordance with the Contract Documents.  <u>See</u> Exhibit G to Capaldo Aff.  Subsequent to Eastern's issuance of its revised "COP #56," any additional ledge that S&R excavated was paid by Lawrence to Eastern at the contractual unit rate of $38.50, pursuant to verified quantities.  <u>See</u> Capaldo Aff.  And, Eastern accepted such payment without any further notice of claim to the City.

    The operative Contract language governing this matter is found in Article 4.3.6 of the General Conditions, after the full text of M.G.L. c. 30, § 39N: "Unless otherwise required by law <u>any requests for equitable adjustments made by the Contractor, and all supporting documentation, must be submitted within 21 days of discovery as a precondition to eligibility for equitable adjustment</u>."  (emphasis added).  Additionally, the other Claims provisions of the General Conditions also require that claims for additional costs be filed within 21-day of the occurrence and in writing, with the documentation to substantiate that differing site condition exists.

Massachusetts courts strictly enforce the notice requirements of M.G.L. c. 30, § 39N. See Glynn v. Gloucester, 21 Mass. App. Ct. 390, 396 (1986); Skopek Bros., Inc. v. Webster Housing Authority, 11 Mass. App. Ct. 947 (1981); Kiewit-Atkinson-Kenny v. Massachusetts Water Resources Authority, 2002 WL 31187691 at p. 15 (Mass. Super. Sept. 3, 2002); James J. Myers, Massachusetts Construction Law § 9-3 (2004 ed., Lexis Publishing) ("failure to properly make a claim in writing as soon as the grounds for the claim are known usually precludes the contractor from recovering his additional costs") Compare Sutton Corp. v. Metropolitan Dist. Comm'n., 423 Mass. 200, 205 (1996) (where contractor, after encountering condition, "ceased operations and notified the [owner] by letter seeking an equitable adjustment," it satisfied the notice requirements).

The reason for these notice provisions is to allow the awarding authority (and/or the general contractor) to investigate the allegedly "differing" conditions and determine whether they actually do differ; to decide whether the work should proceed and, if so, in what manner; and thereafter, to monitor the costs as they are incurred. See M.G.L. c. 30, § 39N (authority "shall make an investigation of such physical conditions"); Sutton Corp., 423 Mass. 200, 207-08 ("[w]ithout such notice, the contracting authority was unable to monitor the additional expenses incurred by the contractor"); Kiewit-Atkinson-Kenny at p. 3 (notice requirements for differing site condition allow the authority "to investigate the events giving rise to the change proposal, … to take timely corrective action in order to minimize the impacts of any claimed additional work and to monitor the costs incurred by [the contractor]").[3] Eastern's total failure to provide written

---

[3] See also T. Brown Constructors, Inc., 132 F.3d 724 (Fed. Cir. 1997) (denying contractor's claim for differing site condition because it failed to give government timely notice and therefore denied government opportunity to investigate claim); Baldi Bros. Constructors v. United States, 50 Fed. Cl. 74, 79 (2001) (same); Appeal of A&M Gregos, Inc., PSBCA 632, 81-1 BCA 15083 (1981) (contractor's failure to properly notify the authority of the alleged differing site condition precluded any equitable adjustment of the contract price because the awarding

notice of its claims until well after the work had commenced denied Lawrence of the opportunity to investigate the circumstance leading to alleged extra work.  Assuming that Eastern was entitled to renegotiate the unit price for the work, insofar as Eastern retracted its initial letters requesting a renegotiation of the unit prices, the lack of initial and subsequent notice deprived Lawrence of the opportunity to determine whether or not to go ahead with the work at an increased cost or consider alternate solutions.  Eastern's lack of timely notice precludes its Differing Site Condition claim as a matter of law.

The other notice and claims provisions in the Contract, even those unrelated to M.G.L. c. 30, § 39N, are also strictly enforced in Massachusetts.  "The contractor must follow the procedures spelled out in the contract … to adjust the price before unilaterally accruing expenses to be pursued later on breach of contract or quantum meruit theories." Glynn v. City of Gloucester, 9 Mass. App. Ct. 454, 460 (1980).  "Generally, a failure by the contractor to invoke its remedies under the agreement … will preclude all relief." Id. at 461; See also Newberg/Walsh J.V. v. MWRA, Suff. Super. C.A. No. 96-1831H, at 10-11 (Feb. 16, 1999).  Massachusetts courts have on numerous occasions denied relief to contractors who fail to strictly comply with contractual notice and claim provisions. See Lawrence-Lynch Corp. v. Dep't. of Env. Management, 392 Mass. 681, 684-85 (1984) ("We conclude that by failing to submit the written statement of the work and the itemized statement of the details and cost of the work in a timely manner, the contractor lost its claim for extra compensation"); Marinucci Bros. v. Commonwealth, 354 Mass. 141, 145 (1968) ("the failure of the contractor to make a timely claim in writing" and an itemized statement of damage "results in a forfeiture of its claim");

---

authority was "unable to verify what the actual conditions were, to consider alternate solutions and to maintain records pertaining to the cost of any additional work."

#595126

<u>Glynn v. City of Gloucester</u>, 21 Mass. App. Ct. at 394-95 (failure to provide timely written notice "precludes recovery on this claim").  It does not matter how limited the time failures are, and prejudice (or lack thereof) to Lawrence is irrelevant.  <u>See</u> <u>Marinucci</u> at 145; <u>Newberg/Walsh</u> at 12-13.

If Eastern asserts a position on notice that Eastern knew or should have known that it was performing work that it believed should be compensated at a renegotiated unit price, Eastern still did not satisfy the notice requirements of the Contract Documents and M.G.L. c. 30, § 39N.  <u>See</u> <u>Kiewit-Atkinson-Kenny</u> at p. 15 (while awarding authority "may have had lots of knowledge about water issues," that did not satisfy notice requirements for a differing site condition claim for excess water); <u>Glynn v. City of Gloucester</u>, 9 Mass.App.Ct. at 462 n. 10 (fact that owner was aware that contractor "was doing extra work and intended to bring a claim to recover for that work" did not satisfy notice requirements).  The Contract Documents unequivocally state that written notice is required.  Eastern's failure to provide the written notice required by the Contract Documents is fatal to its claims.  Lawrence is therefore entitled to summary judgment.

Further, if Eastern seeks to allege that the notice provisions were waived, such an allegation will fail.  The plain terms of Contract Documents, Article 13.4.2, preclude such a waiver:

> No action or failure to act by the Owner, Architect or Contractor shall constitute a waiver of a right or duty afforded them under the Contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach thereunder, except as may be specifically agreed in writing.

Even in the absence of such a provision, if a contractor argues that notice requirements were waived, "it is incumbent on it to show … that there was clear, decisive, and unequivocal conduct

15

on the part of an authorized representative" indicating that the authority "would not insist on adherence to the agreement." Glynn I, 9 Mass. App. Ct. at 462. Waiver to bind a public entity is extremely difficult to establish. See, e.g., Sutton Corp., 423 Mass. 200, 207-08; Lawrence-Lynch Corp, 392 Mass. at 684-85. Eastern, a contractor that has performed significant public work in Massachusetts with notice provisions similar to the provisions in this matter, was certainly aware that its written notice requirements could not be waived. See, e.g., Kiewit-Atkinson-Kenny at p. 15. Even if Eastern can somehow avoid the clear language of the Contract Documents, it cannot show any conduct that meets the "clear, decisive, and unequivocal" standard. It cannot point to any express statement on the part of Design Partnership or Lawrence that the notice requirements need not be followed.

Therefore, because Eastern failed to provide written notice of its claim as required by statute and the Contract Documents, Eastern's claim is barred as a matter of law.

**D.    Eastern Failed to provide the City with Supporting Documentation to Validate its Claim for an Equitable Adjustment Resulting from a Differing Site Condition**

As noted above, Article 4.3.6 of the General Conditions, after the full text of M.G.L. c. 30, § 39N, states, "[u]nless otherwise required by law any requests for equitable adjustments made by the Contractor, and all supporting documentation, must be submitted within 21 days of discovery as a precondition to eligibility for equitable adjustment." (emphasis added).

At no time did Eastern provide any supporting documentation to the City on account of its purported claim for a differing site condition. See Capaldo Aff. If there was subsurface information included in the Contract Documents that Eastern found was not representative of the actual condition, Eastern was required by the Contract Documents to provide its analysis of such conditions, e.g., rock profiles, borings data, etc. Eastern's mere assertion in a letter that it

16

believes it is entitled to renegotiate the unit price for General Rock Excavation because the quantity of excavation exceeded the amount estimated in the Contract Documents does not meet the requirement that it submit "all supporting documentation" within 21 days of discovery of the condition.  There has never been any submission of any documentation to substantiate that a differing site condition existed.  See Capaldo Aff.; Affidavit of Chad L. Hershman ("Hershman Aff."); Affidavit of Doreen M. Zankowski; and Affidavit of Charles E. Schaub, Jr.

As a result, because notice and claim provisions are strictly construed in public contracts in Massachusetts (See discussion above, Section C.), Eastern's claims fail as a matter of law due to its failure to provide supporting documentation for those claims.

**E.    Eastern never provided timely written notice of any change or addition to its previously-made claim for an equitable adjustment resulting from a differing site condition.**

Article 4.3.3 of the General Conditions states in relevant part that, "[a]ny change or addition to a previously made Claim shall be made by timely written notice in accordance with this subparagraph 4.3.3."

Even if Eastern were to argue that any of its correspondence to the Design Partnership constitutes notice of its claim for equitable adjustment resulting from differing site conditions, Eastern was strictly required by Article 4.3.3 to provide additional notice of a change or addition to such claim.

Hartford, on behalf of S&R, submitted additional claims for over $2,600,000.00 by letters dated November 18, 2002 and December 5, 2002.  This was well after the site work was performed and was over 250% of the initial S&R Subcontract value.  S&R's entire Subcontract value was $1,050,000.00, which included many items other than the rock excavation (at least 12 specification sections total, including 02200 related to excavation).  See Exhibit B to Capaldo

17

Aff.  The claims submitted by S&R in November and December of 2002 alleged that the cost to remove a cubic yard of rock was $275.00.  See Exhibit E to Hershman Aff.   S&R was required to remove 3,000 cy of material as part of the original contract.  Thus, S&R grossly underbid the Project, as the cost to remove the base quantity of 3,000 cy would itself be $825,000, leaving less than $250,000 to perform the majority of the sitework.

Eastern never submitted S&R's claims/requests to Design Partnership or the City.  See Capaldo Aff.  Design Partnership first learned of these submissions after the filing of the Third-Party Complaint.  See Capaldo Aff.  The allegations within the complaint that such communications were sent to the City are simply not correct.[4]  Such submissions were not only never sent, but also were well beyond the 21-day limitation.

Insofar as Eastern's currently claimed amount, over $2,669,000, is well-beyond its originally claimed amounts of $29,722 and later, $97,466.60, it is clear that Eastern failed to comply with requirements of Article 4.3.3.  Therefore, because notice and claim provisions are strictly construed in public contracts in Massachusetts (See discussion above, Section C.), Eastern's claims fail as a matter of law.

## CONCLUSION

There is no genuine issue as to any material fact that Eastern did not encounter, or document the existence of, a differing site condition, and that Eastern failed to comply with the contractual and statutory notice and submission requirements applicable to extra work claims and

---

[4] The Affidavits of Zankowski, Schaub and Hershman detail the efforts undertaken by the City to determine if any such notice was provided.  Eastern's inability to produce such documents is fatal to its claim.  Eastern's responses to the City's interrogatories confirm that Eastern never provided S&R's November 18, 2002 and December 5, 2002 letters to the City, because Eastern states that the City rejected S&R's claims, which is a reference to the initial November 1, 2001 and July 10, 2002 requests to renegotiate unit pricing, which Design Partnership, on behalf of the City, responded to.

#595126

Differing Site Condition claims. These undisputed facts entitle Lawrence to summary judgment as a matter of law. Therefore, the City of Lawrence respectfully requests that this Court enter summary judgment in its favor and against Eastern on Counts I and II of Eastern's Third Party Complaint.

Respectfully Submitted,

Third-Party Defendant:
CITY OF LAWRENCE

By its Attorneys,

Dated: September 15, 2006

/s/ Doreen M. Zankowski
_____
Joel Lewin, BBO #298040
Doreen M. Zankowski, BBO #558381
HINCKLEY, ALLEN & SNYDER LLP
28 State Street
Boston, MA 02109-1775
(617) 345-9000

## CERTIFICATE OF SERVICE

I, Doreen M. Zankowski, hereby certify that on this 15th day of September 2006, I caused to be served a copy of the foregoing document by facsimile and first class mail, postage pre-paid, to counsel of record in this matter.

/s/ Doreen M. Zankowski
_____

19

#595126