UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HARTFORD FIRE INSURANCE CO.,<br><br>    Plaintiff,<br><br>v.<br><br>EASTERN CONTRACTORS, INC.<br><br>    Defendant / Third Party Plaintiff,<br><br>v.<br><br>CITY OF LAWRENCE, CITY OF FALL RIVER, and FREETOWN/LAKEVILLE REGIONAL SCHOOL DISTRICT,<br><br>    Third Party Defendants. | C.A. No. 03-12502 NMG |

## CITY OF LAWRENCE'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

1. On June 27, 2001, Eastern Contractors, Inc. ("Eastern") entered into a Contract (the "Contract") with the City of Lawrence, Massachusetts ("Lawrence" or the "City") for the construction of the new Wetherbee Elementary/Middle School in Lawrence, Massachusetts (the "Project"). See Affidavit of David E. Capaldo, AIA ("Capaldo Aff.").

2. David E. Capaldo, AIA, of Design Partnership of Cambridge ("Design Partnership") was the lead designer for the Project, and was the authorized representative of the the City for all written correspondence directed to the Owner on the Project. See Capaldo Aff.

3. Article 4.3.1 of the General Conditions for the Project, included as part of the Contract Documents, states that "[a] Claim is a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money,

1

#595130

extension of time or other relief with respect to the terms of the Contract. The term 'Claim' also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. Claims must be made by written notice. The responsibility to substantiate Claims shall rest with the party making the Claim." See Exhibit A attached hereto.

4. Article 4.3.3 of the General Conditions states that [c]laims by either party must be made within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later. Claims must be made by written notice. Any change or addition to a previously made Claim shall be made by timely written notice in accordance with this subparagraph 4.3.3." See Exhibit A attached hereto.

5. Article 4.3.6 of the General Conditions (Claims for Concealed or Unknown Conditions) includes the provision required by M.G.L. c. 30, § 39N:

> "If, during the progress of the work, the contractor or the awarding authority discovers that the actual subsurface or latent physical conditions encountered at the site differ substantially or materially from those shown on the plans or indicated in the contract documents either the contractor or the contracting authority may request an equitable adjustment in the contract price of the contract applying to work affected by the differing site conditions. A request for such an adjustment shall be in writing and shall be delivered by the party making such claim to the other party as soon as possible after such conditions are discovered. Upon receipt of such a claim from a contractor, or upon its own initiative, the contracting authority shall make an investigation of such physical conditions, and, if they differ substantially or materially from those shown on the plans or indicated in the contract documents or from those ordinarily encountered and generally recognized as inherent in work of the character provided for in the plans and contract documents and are of such a nature as to cause an increase or decrease in the cost of performance of the work or a change in the construction methods required for the performance of the work which results in an increase or decrease in the cost of the work, the contracting authority shall make an equitable adjustment in the contract price and the contract shall be modified in writing accordingly."

#595130

See Exhibit A attached hereto.

6. Article 4.3.6 of the General Conditions also states that "[u]nless otherwise required by law any requests for equitable adjustments made by the Contractor, and all supporting documentation, must be submitted within 21 days of discovery as a precondition to eligibility for equitable adjustment."  See Exhibit A attached hereto.

7. Division 02200-1.10 of the specifications, entitled "Unit Prices," which is part of the Contract Documents, includes the following relevant provisions:

> "A. Base bid volumes: The following stated quantities should be included in the Contractor's base bid.  Material quantities encountered that are greater than or less than these base bid volumes shall be subject to the provisions included herein. …
>
>   2. Rock Excavation:
>
>   The Contractor shall carry in his base bid for the cost for removing 3000 cubic yards of General Rock Excavation…
>
>     a. If the total amount of Rock Excavation exceeds the quantity of Rock Excavation included in the Contract as part of the base bid, the Owner shall pay for the excess excavation at the unit price specified herein. …
>
> B. Should unanticipated conditions arise that result in an increase … of certain classes of work from those required by the Contract Documents, the unit prices below shall be used, at the option of the Owner.  The Unit Prices shall represent the exact net amount per unit to be paid to the Contractor. … No additional adjustment will be allowed for overhead, profit, insurance, or other direct or indirect expenses of the contractor or subcontractor.  No amount, other than that specified herein, will be paid by the Owner for excavation herein defined.
>
> C. Unit Prices shall be applied to approved excavation of material that has been measured in place as specified herein. …
>
>   2. General rock excavation including all costs relating to such rock excavation, including blasting, dewatering, removal of the excavated material from the site and disposal, per cubic yard.  … $38.50."

See Exhibit A to Capaldo Aff.

3

#595130

8.  On July 30, 2001, S&R Construction Company, Inc. ("S&R") entered into a Subcontract (the "Subcontract") with Eastern for performance of certain site work at the Project for the subcontract amount of $1,050.000.00. See Exhibit B to Capaldo Aff.

9.  Under the terms of the Subcontract, S&R, among other things, agreed to be bound to Eastern by the terms and conditions of the Contract, including but not limited to the General Conditions and division 02200 of the specifications. See Exhibit B to Capaldo Aff

10. On November 1, 2001, Eastern submitted "COP #11 General Rock Excavation" to the City's Architect, Design Partnership of Cambridge ("Design Partnership"), with the note, "Enclosed please find COP#11 for General Rock Excavation in excess of the Contract Allowances. Please be advised that under MLG [sic.] c30 s39N that the Contractor may request to negotiate a revised unit costs for this Contract Change." Eastern included some back-up with its submittal,[1] and calculated the Total Cost for COP #11 as follows:

> 3,772 cy @ $38.50 = $145,222.00.
>
> Less Contract Allowance = -$115,500.00.
>
> Difference = $145,222.00 - $115,500.00 = $29,722.

See Exhibit C to Capaldo Aff.

11. On November 1, 2001, Design Partnership's David Capaldo issued a letter to Eastern, writing therein in relevant part:

> "In response to your change order proposal #11 … We agree that you are entitled to additional compensation for the additional subsurface condition encountered. However, with specific regard to the language included referencing MGL c30 s39N and your position that you are entitled to negotiate a revised unit cost for rock excavation. [sic.] We respectfully

---

[1] Including Job Invoice Nos. 103, dated August 23, 2001, for 400 yards Rock Excavation; 106, dated September 27, 2001, for 3,251 yards Rock Excavation; 108, dated October 12, 2001, for 83 yards Rock Excavation; and 109, dated October 16, 2001, for 25 yards Rock Excavation.

4

#595130

> disagree with your interpretation. … There is no language in 30:39N that mentions a contractors [sic.] right to renegotiate a previously agreed to unit cost. … The contract documents <u>do not</u> tell the bidder to carry the mentioned unit price for the quantity of material to be bid on. The unit price is established for work above or below the given quantity. … [W]e cannot sign the Change Order Proposal as drafted. The reservation of your right to renegotiate the unit price must be removed. …" (emphasis in original)

<u>See</u> Exhibit D to Capaldo Aff.

12. On March 13, 2002, Eastern apparently submitted a revised "COP #11 General Rock Excavation" to Design Partnership, included some back-up with its submittal,[2] and calculated the revised Total Cost for COP #11 as follows:

> 3,734 cy @ $38.50 = $143,759.00.
>
> Less Contract Allowance = -$115,500.00.
>
> Difference = $143,759.00 - $115,500.00 = $28,259.00.

<u>See</u> Exhibit E to Capaldo Aff.

13. Sometime after March 13, 2002, TDPC issued C.O. #2 to Eastern, including therein the amount of $28,259.00 for "COP #11." Lawrence paid Eastern the amounts in C.O. #2 pursuant to the Contract Documents. <u>See</u> Capaldo Aff.

14. On or about July 10, 2002, Eastern submitted COP #56 (Excess Ledge Removal) to TDPC, again apparently including a note that pursuant to M.G.L. c. 30, § 39N, Eastern may request to negotiate a revised unit cost for the work. <u>See</u> Capaldo Aff.

15. On August 22, 2002 David Capaldo issued a letter to Eastern, writing therein in relevant part:

---

[2] Including Job Invoice Nos. 103, dated August 23, 2001, for 400 yards Rock Excavation; 106, dated September 27, 2001, for 3,251 yards Rock Excavation; and 108, dated October 12, 2001, for 83 yards Rock Excavation.

> "Please be advised that [C.O.P.] #56 (Excess ledge removal) was rejected due to the provision that [ECI] included in the proposal to re-negotiate the unit price. Otherwise this proposal was found acceptable and would have been approved if that caveat had not bee included. … Based on the contract documents, ledge removal is included in the scope of work, including the provisions for additional ledge beyond the base contract pay limit. Therefore [ECI] must proceed with the ledge removal as required by the contract documents. Ledge removal beyond the base pay limit of the contract will be approved on future Change orders as it had been previously, at the unit price stipulated in the contract documents."

See Exhibit F to Capaldo Aff

16. On August 23, 2002, Eastern apparently submitted a revised COP #56 (General Rock Excavation) to TDPC, included some back-up with its submittal,[3] and calculated the revised Total Cost for COP #56 as follows:

2,531.6 cy @ $38.50 = $97,466.60.

See Capaldo Aff.

17. Sometime after August 23, 2002, TDPC issued C.O. #7 to Eastern, including therein the amount of $97,466.60 for "COP #56." Lawrence paid Eastern the amounts in C.O. #2 pursuant to the Contract Documents. See Capaldo Aff.

18. On or about March 8, 2004, by way of Eastern's Third Party Complaint, Lawrence was made aware for the first time that Hartford Fire Insurance Company ("Hartford"), as surety to S&R, alleged claims against Eastern "arising out of additional work performed by S&R," apparently exceeding $2,669,409.00 based on letters from S&R Construction Company, Inc. ("S&R"); and that Eastern alleged that such claims were submitted to Lawrence, that Lawrence allegedly failed and refused to approve or make payment of such claims, and that

---

[3] Including Job Invoice Nos. 371, dated May 13, 2002, for 79.65 yards General Rock Excavation; and 372, dated May 13, 2002, for 2,451.95 yards General Rock Excavation.

6

#595130

Eastern would be looking to Lawrence for payment of such claims if Eastern was found liable to Hartford.  See Capaldo Aff., and Affidavits of Charles E. Schaub and Chad L. Hershman.

Respectfully Submitted,

Third-Party Defendant:
CITY OF LAWRENCE

By its Attorneys,

/s/ Doreen M. Zankowski
_____
Joel Lewin, BBO #298040
Doreen M. Zankowski, BBO #558381
HINCKLEY, ALLEN & SNYDER LLP
28 State Street
Boston, MA 02109-1775
(617) 345-9000

Dated: September 15, 2006

## CERTIFICATE OF SERVICE

I, Doreen M. Zankowski, hereby certify that on this 15th day of September 2006, I caused to be served a copy of the foregoing document by facsimile and first class mail, postage pre-paid, to counsel of record in this matter.

/s/ Doreen M. Zankowski
_____

#595130