UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HARTFORD FIRE INSURANCE CO.,<br><br>　　　Plaintiff,<br><br>v.<br><br>EASTERN CONTRACTORS, INC.<br><br>　　　Defendant / Third Party Plaintiff,<br><br>v.<br><br>CITY OF LAWRENCE, CITY OF FALL RIVER, and FREETOWN/LAKEVILLE REGIONAL SCHOOL DISTRICT,<br><br>　　　Third Party Defendants. | C.A. No. 03-12502 NMG |

## AFFIDAVIT OF DAVID E. CAPALDO

1.　I, David E. Capaldo, AIA, am a Senior Associate architect at Design Partnership of Cambridge, Inc. ("Design Partnership").

2.　I was the lead designer of the new Wetherbee Elementary / Middle School in Lawrence, Massachusetts (the "Project"), and was the authorized representative of the Owner of the Project, City of Lawrence of Lawrence ("Lawrence" or the "City"), for all written correspondence directed to the Owner on the Project.

3.　Based on the pre-bid investigations performed by Design Partnership, the City and their respective consultants, Design Partnership determined that approximately 3,000 cy of General Rock Excavation would be required to accommodate construction of the Project. As Design Partnership recognized that the actual amount of General Rock Excavation would vary



#606467

1

and is not precise, Design Partnership included specific provisions in the Contract Documents to address such circumstances.

4. The Contract Documents governing construction of the Project included explicit provisions that "[t]he Contractor shall carry in his base bid the cost for removing 3000 cubic yards of General Rock Excavation…" The specification further provides that for an increase or decrease in quantities from those estimated in the Contract, there would be an upward or downward adjustment of $38.50 per cy. See Exhibit A, a copy of specification 02200-1.10.

5. On June 27, 2001, the City contracted with Eastern as its General Contractor.

6. On July 30, 2001 Eastern in turn subcontracted with S&R Construction Company, Inc. ("S&R") to perform certain site work at the Project for the amount of $1,050,000.00. See Exhibit B.

7. The Contract Documents enumerated in the Prime Contract between Lawrence and Eastern (the "Contract") included certain General Conditions and technical information that were incorporated by reference into the Subcontract between Eastern and S&R (the "Subcontract"). See Exhibit B.

8. At no time prior to the bid for the Project, or before commencement of its work, did Eastern ever object to the above-noted contract provisions, estimated quantities, or unit pricing related to differences in the quantity of rock to be removed.

9. Eastern and its subcontractor, S&R, commenced their work at the Project in August 2001.

10. On November 1, 2001, I received a letter from the General Contractor on the Project, Eastern Contractors, Inc. ("Eastern"), entitled, "Re: COP#11 General Rock Excavation,"

wherein Eastern stated in part, "[p]lease be advised that under MLG c30 s39N that the Contractor may request to negotiate a revised unit cost for this Contract Change." See Exhibit C.

11.    Eastern's November 1, 2001 COP#11 letter included back-up for a change-order request in the amount of $28,259, calculated as 3,772 cy of excavated material multiplied by the contractual unit price of $38.50 / cy; less the contract allowance of 3,000 cy of excavated material multiplied by the contractual unit price of $38.50. The back-up consisted of two summary sheets, plus S&R Construction Company, Inc. ("S&R") "Job Invoice" tickets dated 8/23/01, 9/27/01, 10/12/01, and 10/16/01. See Exhibit C.

12.    On November 1, 2001, I responded to Eastern's November 1, 2001 COP#11 letter, therein rejecting Eastern's COP#11 as drafted, based on my understanding of M.G.L. c. 30, § 39N. I also included a copy of M.G.L. c. 30, § 39N. See Exhibit D.

13.    Months later, on or about March 13, 2002, I received a revised COP#11 from Eastern, which included back-up for a change-order request in the amount of $28,259, calculated as 3,734 cy of excavated material multiplied by the contractual unit price of $38.50; less the contract allowance of 3,000 cy of excavated material multiplied by the contractual unit price of $38.50. The back-up consisted of two summary sheets, plus S&R "Job Invoice" tickets dated 8/23/01, 9/27/01, and 10/12/01. See Exhibit E.

14.    After receipt of Eastern's revised COP#11, I issued C.O. #2 to Eastern on behalf of the City, including therein the amount of $28,259.00 for "C.O.P. #11."

15.    Even after November 2001, S&R continued to perform ledge excavation beyond the contractual 3,000 cubic yards, submitting Job Invoices for such work, which Tishman continued to review and, if accurate, verify for quantity purposes.

3

#606467

16. On or about July 10, 2002, I received a letter from Eastern enclosing COP#56, another request for a change-order for excavated materials, based on a cy quantity of material multiplied by the unit price of $38.50 / cy, but also including language regarding a renegotiation of the unit price based on M.G.L. c. 30, § 39N.

17. On August 22, 2002, I responded to Eastern's COP#56 request by indicating that COP#56 could not be approved because it included language related to the incorrect premise that Eastern could renegotiate the unit price for excavated materials. See Exhibit F.

18. On or about August 23, 2002, I received Eastern's revised COP#56, requesting a change-order in the amount of $97,466.60, based on 2,531.6 cy of excavated material multiplied by $38.50 / cy. See Exhibit G.

19. After receipt of Eastern's revised COP#56, I issued C.O. #7 to Eastern on behalf of the City, including therein the amount of $97,466.60 for "COP #56."

20. Besides the correspondence noted above, I did not receive any further written communication from Eastern regarding excavated materials that could be construed as written notice of a claim or supporting documentation for a claim for differing site conditions.

21. I never received any documentation from Eastern that establishes a differing site condition or otherwise substantiates Eastern's allegation as to a claim related to rock excavation.

22. I did not receive or see copies of the submissions dated November 18, 2002 and December 5, 2002 from S&R to Eastern until after this litigation was underway.

Subscribed and sworn to under the pains and penalties of perjury this 15th day of September 2006.

_____  9/15/06
DAVID E. CAPALDO

#606467