UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C. A. NO. 03-12502 NMG

| | |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY, | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) |
| | ) |
| EASTERN CONTRACTORS, INC., | ) |
| Defendant/Third Party Plaintiff | ) |
| | ) |
| vs. | ) |
| | ) |
| CITY OF LAWRENCE, | ) |
| Third Party Defendant | ) |

**EASTERN CONTRACTORS, INC.'S MEMORANDUM OF LAW
IN OPPOSITION TO THE MOTION FOR PARTIAL SUMMARY JUDGMENT
FILED BY THE CITY OF LAWRENCE**

The Motion for Partial Summary Judgment filed by the City of Lawrence essentially asserts two (2) distinct propositions: (1) there is no differing condition which would require or entitle Eastern Contractors, Inc. ("Eastern") or its subcontractor S&R construction to an equitable adjustment in unit prices, and (2) Lawrence contends that there was a failure to furnish notice as required by the contract within the limited time frame established by the contract documents. Eastern respectfully submits that there are genuine issues of material fact concerning:

    1) the existence of the condition upon which the claim for equitable adjustment is based;

    2) the conduct of the City of Lawrence in refusing to permit Eastern to include a reservation of rights to seek equitable adjustment in its payment requests for the very work which is the subject of the equitable adjustment;

and as a matter of law:

3) written notices of claims of rights to seek equitable adjustment sent while the ledge removal work upon which the equitable adjustment is sought which accrued over many months including a copy of the claim documents received from Eastern's subcontractor, S&R Construction, sent to counsel for Lawrence in May of 2003, long before this litigation was commenced;

4) the failure of Lawrence and its Architect to fulfill their duties to investigate the claim for equitable adjustment under the applicable statute;

5) unresolved questions of fact and law whether the so-called "contract" provisions requiring submission of all supporting data within twenty-one (21) days as a pre-condition to eligibility for equitable adjustment notice conflict with the statutory provisions found in G.L. ch. 30, § 39N.

At issue is the application of the statutory provision applicable to this public construction contract found at General Laws chapter 30, § 39N which is captioned (Claims for concealed or unknown conditions) and provides as follows:

> If, during the progress of the work, the contractor or the awarding authority discovers that the actual subsurface or latent physical conditions encountered at the site differ substantially or materially from those shown on the plans or indicated in the contract documents either the contractor or the contracting authority may request an equitable adjustment in the contract price of the contract applying to work affected by the differing site conditions. A request for such an adjustment shall be in writing and shall be delivered by the party making such claim to the other party as soon as possible after such conditions are discovered. Upon receipt of such a claim from a contractor, or upon its own initiative, the contracting authority shall make an investigation of such physical conditions, and, if they differ substantially or materially from those shown on the plans or indicated in the contract documents or from those ordinarily encountered and generally recognized as inherent in work of the character provided for in the plans and contract documents and are of such a nature as to cause an increase or decrease in the cost of performance of the work or a change in the construction methods required for the performance of the work which results in an increase or decrease in the cost of the work,

There is no specific form of notice required under chapter 30, § 39N and by its very nature the statute is remedial in nature designed to address unforeseen conditions affecting both contractors and public owners and should be given a liberal construction.

It appears undisputed that, in fact, a notice was sent by Eastern Contractors on or about November 1, 2001, which specifically referred to General Laws chapter 30, § 39N and made reference to a request to renegotiate a revised unit cost. (See Exhibit C to Affidavit of David Capaldo.)

Once a notification of a claim is made under the statute, the next step falls squarely upon the contracting authority who,

> "<u>shall</u> make an investigation of such physical conditions, and, if they differ substantially or materially from those shown on the plans or indicated in the contract documents or from those ordinarily encountered and generally recognized as inherent in work of the character provided for in the plans and contract documents and are of such a nature as to cause an increase or decrease in the cost of performance of the work or a change in the construction methods required for the performance of the work which results in an increase or decrease in the cost of the work, the contracting authority shall make an equitable adjustment in the contract price and the contract shall be modified in writing accordingly."   G.L. ch. 30, § 39N.

It is also clear from the response of the Contracting Authority, through its architect, that the statutorily mandated investigation was not conducted but instead Lawrence's representative, Mr. Capaldo, evaluated the claim for additional compensation based upon his characterization of the contract as a lump sum contract not a unit price contract (notwithstanding the fact that the contract agreement contained unit prices established by the project owner, which were not the subject of competitive bidding).  Mr. Capaldo's analysis does not address the core contention whether or not the quantity increase is a condition which differs materially and substantially

from those shown on the plans or indicated in the contract documents, or from those ordinarily encountered and generally recognized as inherent in the work, and more importantly Mr. Capaldo's analysis does not address whether or not the condition as claimed results in an increase or decrease in the cost of the work. Instead Mr. Capaldo offers his understanding of the statute and further attempted to circumvent the remedial nature of the statute by directing the contractor to remove its reservation of the rights to renegotiate the unit price. (See Capaldo Affidavit paragraph 12 and Exhibit E thereto.)

The City of Lawrence, in its Statement of Undisputed Facts and its Memorandum of Law, suggests that the Contractor's acquiescence in the clear directive from the City's Architect to remove such reservation of right and resubmit the request for compensation based on the contractually established unit prices, are somehow tantamount to a waiver of claim. Such is clearly not correct. Eastern has established that, subsequent to the directive from Mr. Capaldo on November 1, 2001, it repeatedly attempted to reserve a right to seek a renegotiation of unit prices based upon the provisions of General Laws chapter 30, § 39N. In fact, Lawrence and its Architect refused to process requests for payment which contained such reservations, while acknowledging that in the absence of an approved change order proposal, the contractor's request for payment for work performed could not be made. (See Motwane Affidavit.)

In his letter of June 22, 2002 (Exhibit F. to the Capaldo Affidavit), Mr. Capaldo states:

"Please be advised that Change Order Proposal #56 (Excess ledge removal) was rejected due to the provision that Eastern Contractors included in the proposal to renegotiate the unit price. Otherwise this proposal was found acceptable and would have been approved if that caveat had not been included. Without an approved change order proposal there was no mechanism for which payment for the ledge removal was possible. In an effort to allow for timely payment for the previously completed excess ledge removal we ask that you resubmit COP #56 excluding the above mentioned caveat as soon as possible."

The general rule is that a "contractor's invocation of remedies available under either the contract or applicable statutes such as G.L. c. 30, § 39N, must be addressed by the public agency in good faith. Glynn v. Gloucester, 9 Mass.App.Ct. [454, 460-461, 401 N.E.2d 886 (1980) (*Glynn I* ) ]." Glynn v. Gloucester, 21 Mass.App.Ct. 390, 397, 487 N.E.2d 230 (1986)( *Glynn II*).

The City's refusal to permit the Contractor to reserve its rights with regards to a claim for an equitable adjustment by declining to process payment requests which include such reservation is not consistent with the obligation of good faith. In point of fact such a course of conduct is reminiscent of the calculated pattern of arbitrary and capricious conduct condemned by the Supreme Judicial Court in the case of Farina Bros. Co. v. Com., 357 Mass. 131, at 138-140, 257 N.E.2d 450, at 455 - 456 (Mass. 1970), in which the refusal of the government contracting authority to extend the benefits of a contractual provision for time extensions came in for harsh criticism.

> In Farina the Court stated;
>
> "In circumstances such as here appear, however, the Commonwealth in effect has used the delay provisions to whipsaw the contractor. So employed, they cannot absolve the Commonwealth of liability. If, as may be the case, delay is to occur during performance of the contract [139] the collateral provisions relating to appropriate extensions should come promptly into play. In the present instance their application was unconscionably delayed in a manner to deprive the contractor of such protections as the Blue Book afforded to it. Adherence to these standards by both parties is required. The evidence supports the conclusion that agents of the Commonwealth by intentionally obstructing the application of those standards caused damage to the contractor. "

Farina, supra.

As applied to the present case, Lawrence, through its Architect, cannot prevent the Contractor from preserving its claims by a reservation of rights by refusing payment requests including such language and simultaneously point to the Owner required retraction of such claims as evidence of failure to meet the notice requirements of the statute and the contract. Such a pattern is as arbitrary and capricious as the failure to grant time extensions in Farina,

supra, and then to threaten the contractor with sanctions and forfeiture of its claims for non-compliance. The evidence establishes that the context in which these claims were being administered routinely disregarded the statutory duty of investigation and insisted that notices of claims be withdrawn. In such circumstances it presents a genuine question of fact whether further efforts at notice would have been futile.

> "Although performance of a particular act by one party is contractually specified to be precedent to the arising of an obligation in another, the prior act need not be performed where it would be a hollow gesture sure to be disregarded by the other party." Trustees of Boston & Maine Corp. v. Massachusetts Bay Transp. Authy., 367 Mass. 57, 61-62, 323 N.E.2d 870, 873 n. 2 (1975), and cases cited."

D. Federico Company, Inc. v. New Bedford Redevelopment Authority, 9 Mass. App. Ct. 141.

The contentions of the City of Lawrence regarding timeliness of submittals of data in connection with the claims are likewise of dubious merit. The claims for the work associated with ledge accrued over a period of many months as evidenced by the change orders and change order proposals which span the period from November 1, 2001 ( Exhibit C, Capaldo Affidavit)  through at least December 2002. (See submittal of Dante Cornelio dated Dec. 13, 2002 as COP # 89, Exhibit A-4; see also correspondence dated October 18, 2002 from Mr. Bhatia advising that a claim for renegotiation of unit prices was in preparation, Exhibit A-1.)

The City attempts to assert that it suffered some form of prejudice which deprived it of the opportunity to investigate the circumstances relating to the extra work. Nothing could be further from the truth. The City's duty to investigate was required by statute and triggered upon the first notice. It failed to do so. It failed to investigate in each subsequent instance when the City, through its Architect, directed that the claims for a right to re-negotiate the unit price had to be withdrawn in order for payments to be processed.

Furthermore, the City, through its Architect and consultants, was monitoring the quantity of rock and ledge being excavated at the site of the project. The City of Lawrence's Memorandum of Law concedes that the quantities of rock were monitored and verified for payment purposes by its Architect and consultants. (See Capaldo Affidavit and City of Lawrence's Memo at pp. 10 & 11.) The present matter is very similar to the case of Sutton Corp. v. Metropolitan Dist. Com'n, 423 Mass. 200 (1996) in which the Supreme Judicial Court denied the government's claim that the contractor had failed to comply with notice requirements and caused its claim to be forfeit.

In response to the MDC's contention that the claim had been forfeited the SJC held;

> "We disagree. § 39N mandates that its provisions be included in public works construction contracts. It provides a specific procedure and remedy for the contractor encountering differing subsurface or latent physical conditions. Article XVIII, on the other hand, applies to "extra work," rather than work required by the contract. The unexpected soil condition encountered by Sutton required it to modify its construction methods and incur significant additional expense in order to complete the contractually required work. Such modifications and additional expense do not constitute "extra work" within the meaning of Article XVIII. Cf. Lawrence-Lynch Corp. v. Department of Envtl. Management, 392 Mass. 681, 682-683, 467 N.E.2d 838 (1984).
>
> It is true that contractors seeking to recover payment in excess of the contract price must follow the procedures set out in the contract. See Lawrence-Lynch Corp. v. Department of Envtl. Management, supra at 684-685, 686, 467 N.E.2d 838; State Line Contractors, Inc. v. Commonwealth, 356 Mass. 306, 317-319, 249 N.E.2d 619 (1969); Marinucci Bros. & Co. v. Commonwealth, 354 Mass. 141, 144-145, 235 N.E.2d 783 (1968); Chiappisi v. Granger Contracting Co., 352 Mass. 174, 177-178, 223 N.E.2d 924 (1967); Lewis v. Commonwealth, 332 Mass. 4, 5-7, 122 N.E.2d 888 (1954); Glynn II, supra at 394-395, 487 N.E.2d 230; Skopek Bros. v. Webster Hous. Auth., 11 Mass.App.Ct. 947, 416 N.E.2d 1006 (1981); D. Federico Co. v. Commonwealth, 11 Mass.App.Ct. 248, 252-253, 415 N.E.2d 855 (1981). In those cases, recovery was denied when the contractor failed to give timely notice of its claim to the public agency. Without such notice, the contracting authority was unable to monitor the additional expenses incurred by the contractor. Here, on the contrary, Sutton met the procedural requirements for a claim under § 39N:  it provided timely written notice of its claim to the

> MDC. As the master found, the MDC was aware throughout the project of <u>Sutton's</u> additional expense. <u>Furthermore, there was no evidence or finding that the MDC was prejudiced in any way by the lack of an itemized statement of damages.</u>

<u>Sutton Corp. v. Metropolitan Dist. Com'n,</u> 423 Mass. 200, at 207-208, 667 N.E.2d 838, at 843 (Mass.,1996). (Notes omitted)

In the present case there is no prejudice to the City because the quantities of rock which form the basis of the claim are the same quantities which the City confirmed as being eligible for payment under the contract at the contractually mandated unit prices. Neither the City nor its Architect was deprived of the opportunity to verify the quantities of ledge upon which the claims were based. In fact the City and the Architect measured and confirmed those quantities and approved the same for payment. The present claim from S&R purports to set forth an assertion that it is entitled to an equitable adjustment in the unit prices, not a claim for extra work, nor a claim for disputed quantities of ledge excavated.

The statutory duty to investigate whether the conditions complained of caused an increase or decrease in the cost of performing the work is by law imposed upon the City of Lawrence as the Contracting Authority once notice of a claim has been given.

The City's attempt to engraft a condition that all data to support a claim under the statute within an arbitrary twenty-one (21) day period as a pre-condition to eligibility for equitable adjustment is an attempt to impose an impermissible restrictive contractual limitation upon broad statutory remedy found in G.L. ch. 30, § 39N which the City is not authorized to do. A similar argument was advanced in the <u>Sutton</u> case, <u>supra</u> and was rejected in summary fashion in a footnote:

> "Even if Article XVIII (21 day notice) did apply to Sutton's claim, "to the extent there may be conflict between the expressed contract and the statutorily required provision, the required provision controls." <u>Reynolds Bros. v. Commonwealth</u>, 412 Mass. 1, 5, 586 N.E.2d 977 (1992)."

<u>Sutton Corp. v. Metropolitan Dist. Com'n</u>, 423 Mass. 200, at 207, 667 N.E.2d 838, at 843 (Mass.,1996). ) (Footnote 14)

Where the contractor gave notice of its initial claim which accrued over a period of months, followed by a subsequent submittal, such has been held to satisfy the contractual requirements of a public construction contract.

> "The exhibits indicate that the contractor prepared and submitted its claim at the earliest time practicable, having warned that it was preparing to do so. The nature of the injury to it, occurring as it did over a period of months, made it unlikely that it could engage upon a summary of damages any earlier than it did. See <u>M. DeMatteo Constr. Co. v. Commonwealth</u>, 338 Mass. 568, 582, 156 N.E.2d 659."

*<u>Farina Bros. Co. v. Com.</u> , 357 Mass. 131, at 138-140, 257 N.E.2d 450, at 455 – 456 (Mass. 1970).

## CONCLUSION

The City and the Architect have failed to demonstrate that the significant increase in the quantities of ledge did not cause an increase in the cost of performing such work so as to warrant an equitable adjustment. There are unresolved questions of fact and law which render Summary Judgment inappropriate at this time.

|  | Respectfully submitted,<br>Eastern Contractors, Inc.<br>By its attorneys, |
|---|---|
| Dated: October 6, 2006 | /s/ Edward J. Quinlan_____<br>Edward J. Quinlan, Esq., BBO# 409060<br>David T. Keenan, Esq., BBO# 567325<br>Quinlan & Sadowski, P.C.<br>11 Vanderbilt Avenue, Suite 250<br>Norwood, MA  02062-5056<br>Phone:  781-440-9909<br>Fax:     781-440-9979<br>E-mail:  equinlan@qsatlaw.com |