United States District Court
District of Massachusetts

| | |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| EASTERN CONTRACTORS, INC., ) | Civil Action No. |
| ) | 03-12502-NMG |
| Defendant/Third-Party ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CITY OF LAWRENCE ) | |
| ) | |
| Third-Party Defendant. ) | |

MEMORANDUM & ORDER

GORTON, J.

Eastern Contractors, Inc. ("Eastern") is the defendant in a civil suit filed by the Hartford Fire Insurance Company ("Hartford"), the surety to S&R Construction Company, Inc. ("S&R"). S&R is a construction firm with whom Eastern subcontracted for site work on a number of Massachusetts school construction projects, including several in the City of Lawrence ("Lawrence" or "the City"). This case also involves claims of breach of contract alleged by Eastern against Lawrence in a third-party complaint. Currently pending before the Court is a

-1-

motion by Lawrence for partial summary judgment with respect to certain contract claims.

I.  **Background**

The City of Lawrence contracted with Eastern for the construction of the new Wetherbee Elementary/Middle School. Eastern then subcontracted with S&R to perform extensive site work in the amount of $1.05M. The Design Partnership of Cambridge ("Design Partnership") served as both Lawrence's architect and authorized representative for all correspondence between the City and the contractor.

The subcontract between S&R and Eastern incorporated by reference, the original contract documents between Lawrence and Eastern, including Article 4.3.3 of the General Conditions which contains the following paragraph required by Massachusetts law:

> If, during the progress of the work, the contractor or the awarding authority discovers that the actual subsurface or latent physical conditions encountered at the site differ substantially or materially from those shown on the plans or indicated in the contract documents either the contractor or the contracting authority may request an equitable adjustment in the contract price of the contract applying to work affected by the differing site conditions. A request for such an adjustment shall be in writing and shall be delivered by the party making such claim to the other party as soon as possible after such conditions are discovered. Upon receipt of such a claim from a contractor, or upon its own initiative, the contracting authority shall make an investigation of such physical conditions, and, if they differ substantially or materially from those shown on the plans or indicated in the contract documents or from those ordinarily encountered and generally recognized as inherent in work of the character provided for in the plans and

>contract documents and are of such a nature as to cause an increase or decrease in the cost of performance of the work or a change in the construction methods required for the performance of the work which results in an increase or decrease in the cost of the work, the contracting authority shall make an equitable adjustment in the contract price and the contract shall be modified in writing accordingly.

M.G.L. c.30 § 39N.  Article 4.3.3 of the contract goes on to require that:

>Unless otherwise required by law any requests for equitable adjustments made by the Contractor, and all supporting documentation, must be submitted within 21 days of discovery as a precondition to eligibility for equitable adjustment.

Prior to the bid, Design Partnership, Lawrence and their respective consultants estimated the total rock excavation to be approximately 3,000 cubic yards.  On that basis, all prospective contractors proposed bids for the cost of removing 3,000 cubic yards of rock.  Importantly, the contract also includes an explicit provision to account for the cost of any unanticipated increases or decreases in the amount of excavated materials.  Specifically, Division 02200-1.01 of the contract states that if the total amount of rock excavation exceeds the base bid volume of 3,000 cubic yards, Lawrence will pay for the excess excavation at a unit price of $38.50 for every additional cubic yard.

Work commenced on the project in August, 2001.  In November, 2001, Eastern submitted a "Change Order Proposal ("COP") #11 General Rock Excavation" to Design Partnership requesting additional compensation for "General Rock Excavation in excess of the Contract Allowances [3,000 cubic yards]."  Specifically, the

-3-

COP stated that the total excavated material measured 3,772 cubic yards. The COP stated that according to M.G.L. c.30 § 39N, "the Contractor may request to negotiate a revised unit cost". It was accompanied by two summary sheets and four S&R "Job Invoice" tickets.

In response, Design Partnership agreed that Eastern was entitled to additional compensation, but disagreed with the reference to M.G.L. c.30 § 39N. Specifically, Design Partnership responded that according to the contract, there was no statutory "right to renegotiate a previously agreed to unit cost" and refused to sign the COP unless that language was removed. In March, 2002, Eastern submitted a revised COP, omitting the statutory reference and Design Partnership thereafter paid the requested amount, calculated in accordance with the $38.50 per-cubic-yard rate.

In July, 2002, Eastern submitted another COP, #56 Excess Ledge Removal, again including a reference to M.G.L. c.30 § 39N and a future right to negotiate a revised unit cost for the work. Eastern claimed that it had excavated beyond the contractual 3,000 cubic yards, an additional 2,513.6 cubic yards. In response, Design Partnership again rejected the COP, refusing to sign it unless the allegedly erroneous statutory reference was removed. Again, Eastern submitted a revised COP omitting the statutory reference, and Design Partnership issued a change order

-4-

for the requested amount based on the $38.50 per-cubic-yard rate.

Between August, 2002 and December, 2003, Eastern continued billing and receiving payment at the rate of $38.50 per cubic yard of materials beyond the original estimated amount. Neither Design Partnership nor the City received any additional written correspondence from Eastern regarding a claim for an equitable adjustment pursuant to M.G.L. c.30 § 39N.

In December, 2003, Hartford, as surety to S&R, filed a lawsuit against Eastern alleging, *inter alia*, entitlement to the proceeds of any claims arising out of alleged additional work performed by S&R, exceeding $2.67M. In March, 2004, Eastern filed a third-party complaint against the City alleging multiple claims of breach of contract. Lawrence now seeks partial summary judgment with respect to the first two counts of the third party complaint.

## II.  Discussion

### A.  Legal Standard

Summary judgment is appropriate where the moving party has shown, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law". <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." <u>Id.</u> A <u>genuine</u> issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party". <u>Id.</u>

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. <u>Celotex Corp.</u> v. <u>Catrett</u>, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. <u>O'Connor</u> v. <u>Steeves</u>, 994 F.2d 905, 907 (1st Cir. 1993). If, after viewing the record in the non-movant's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

**B.   Analysis**

The City contends that there was not a "differing site condition" that would entitle Eastern to an equitable adjustment. Additionally, the City argues, even if such a condition existed, Eastern failed to comply with the contractual and statutory notice requirements for making a claim of equitable adjustment

resulting from a differing site condition. Because the Court finds that the extra work necessitated by a greater than anticipated quantity of excavated rock is not the result of a differing site <u>condition</u>, the Court need not address the question of whether Eastern complied with those requirements.

Section 39N of Chapter 30 of the Massachusetts General Laws entitles a contractor to request an equitable adjustment in the contract price if the contractor

> discovers that the actual subsurface or latent physical conditions encountered at the site <u>differ substantially or materially</u> from those shown on the plans or indicated in the contract documents

M.G.L. c.30 § 39N (emphasis added). The City contends that the actual subsurface conditions did not differ substantially or materially, but only in quantity of rock.

The incorporated contract identifies a base bid volume of 3,000 cubic yards and provides that, in the event of unanticipated conditions that require an increase, the Contractor will be paid a unit price of $38.50 per cubic yard for costs entailed in the additional "blasting, dewatering, removal of the excavated material from the site and disposal". Additionally, with respect to any further adjustments, the contract specifically states:

> The Unit Prices shall represent the exact net amount per unit to be paid to the Contractor . . . . No additional adjustment will be allowed for overhead, profit, insurance, or other direct or indirect expenses of the contractor or subcontractor. No amount other than that specified herein,

will be paid by the Owner for the excavation herein defined. The City argues that because the possibility of an increase of quantity was contemplated and provided for in the contract, the conditions differ neither substantially nor materially from those projected by the contract and therefore, M.G.L. c.30 § 39N does not apply.

The Court agrees.  Given that parties to an excavation contract rarely know the exact amount of material that it will be necessary to remove, such contracts typically provide for a rate by which the excavation of more (or less) material will be compensated.  The plain terms of the contract in this case explicitly state that the 3,000 cubic yards is an estimated "base bid volume" and include a provision to account for any variation from that bid.  Eastern was aware of that contractual provision when it bid for the Wetherbee Elementary/Middle School project and agreed to its terms.  There is no evidence that Eastern raised any objection to the contractual unit price or was prevented from negotiating its terms.  Nor does Eastern argue that the costs entailed in the additional rock excavation required work beyond that included within the contract's unit price rate.

On the contrary, it appears simply that Eastern miscalculated the amount of rock material that needed to be excavated and/or the cost of additional excavation.  A difference

-8-

in the excavated rock amount alone, especially where such a difference was provided for in the contract, does not rise to the level of substantial or material difference in the site condition. The present matter is not a case in which the subsurface conditions were "unusual" or "unacceptable" for the work, requiring the utilization of new equipment or techniques. See Sutton Corp. v. Metro. Dist. Comm., 423 Mass. 200, 203-4 (1996). Rather, the project required only the excavation of material in excess of the volume that was originally anticipated. There was a difference in quantity, not kind, of materials; a difference that was contemplated by the parties, explicitly provided for and agreed to in the contract. Therefore, the contractor was not entitled to an equitable adjustment pursuant to M.G.L. c. 30 § 39N because there was no differing site condition.[1]

---

[1] Although the Court's finding makes it unnecessary to consider the City's alternative argument that Eastern failed to comply with the statutory notice requirements, it is clear that the City's contention is well-founded and there is no genuine issue of material fact in that regard. See Sutton Corp., 423 Mass. at 207-8 (citing cases).

**ORDER**

Accordingly, the City of Lawrence's Motion for Partial Summary Judgment (Docket No. 66) is **ALLOWED**.

**So ordered.**

                                     /s/ Nathaniel M. Gorton
                                     Nathaniel M. Gorton
                                     United States District Judge

Dated: January 23, 2007